UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA RODRIGUEZ TRENADO, § | | |
| individually and as representative of § | | |
| the estates of her spouse, § | | |
| MARTIN RAMON TRENADO, deceased, and § | | |
| of her son JOSE TRENADO, deceased, and § | | |
| EMANUEL TRENADO, individually, and § | | |
| JESSICA TRENADO, individually, § | | |
| § | CIVIL ACTION NO. 4:08 CV 249 | |
| Plaintiffs, § | | |
| § | | |
| § | | |
| vs. § | | |
| § | | |
| COOPER TIRE & RUBBER § | | |
| COMPANY, an Delaware Corporation, § | | |
| and SEARS, ROEBUCK AND CO., § | | |
| d/b/a SEARS AUTO CENTER, § | | |
| § | | |
| Defendants. § | JURY | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO SEARS, ROEBUCK & CO.
D/B/A SEARS AUTO CENTER'S MOTION FOR SUMMARY JUDGMENT**

I.  Nature and Stage of the Proceedings

This is a product liability action brought by Plaintiffs against Cooper Tire & Rubber Company ("Cooper") and Sears, Roebuck and Co. d/b/a Sears Auto Center ("Sears"), arising out of a fatal July 21, 2007 accident that resulted from the catastrophic failure of a Sears Guardsman Trailhandler AP extra load tire (size P235/75R15), on plaintiffs' vehicle. The subject tire was manufactured by Cooper for Sears under terms that included the molding of Sears' name on the sidewall of the tire. Plaintiffs assert that the tire was defective and caused the accident, and that

Sears was actively negligent in a number of particulars including participating in the design and manufacture of the tire, and having actual knowledge of a danger in the tire by virtue of Sears' substantial experience with Cooper products sold and marketed by Sears over many years.

Discovery is still ongoing in this case against both Sears and Cooper. No depositions have yet been taken of Sears representatives because Sears has requested multiple extensions for responding to written discovery, which responses are needed for meaningful depositions.

II.     Nature of the Issues

Sears has improperly filed a motion for summary judgment after making several requests for extension of time to respond to basic discovery from plaintiffs that is essential to plaintiffs' ability to prove their case against Sears. Sears' role in designing/manufacturing the failed tire and Sears' subjective knowledge of dangers in the subject tire are not matters independently known or discoverable to plaintiffs, who are merely consumers that purchased the tire from Sears. The discovery served on Sears several months ago is needed to explore these issues, followed most likely by depositions of Sears' representatives concerning 1) Sears' role in the design/manufacture of the subject tire, 2) Sears' actual knowledge of a hazard in the subject tire; and 3) Sears' other active negligence as alleged in the Complaint. Sears' motion should be denied or continued until after discovery is closed..

Alternatively, Sears' motion should be denied on the grounds that plaintiffs have sufficient circumstantial evidence even without discovery responses from Sears to resist summary judgment.

III.    The Facts and Legal Issues in Dispute

   A.   The Substance of Sears' Motion

The gist of Sears' motion for summary judgment is that Sears is a non-manufacturing retailer

of the allegedly defect product (the failed tire) at the center of this case, triggering application of Texas Civil Practice and Remedies Code, Section 82.003. Sears asserts correctly that Section 82.003 exempts retailers such as itself from liability except in specific circumstances. Plaintiffs agree that Cooper, not Sears, was the manufacturer of the subject tire. Plaintiffs also agree that to establish liability against Sears under Texas law, it is necessary for plaintiffs to establish that one of the bases for liability enumerated in Section 82.003 is present. That is where the parties' agreement ends. Sears essentially ignores in its motion that plaintiffs allege in their Complaint [Document 1], numerous facts which if proved will establish liability against Sears under a variety of provisions of Section 82.003, and that Sears has stonewalled discovery needed to prove those allegations.

      B.    <u>The Allegations of the Complaint and Evidence in Support</u>

Texas Civil Practices and Remedies Code section 82.003, immunizes retail sellers of defective products unless the plaintiff can establish one or more of the exemptions contained in subparts 1 through 7 of the statute. Count III of plaintiffs' complaint triggers several of the stated exceptions within Section 82.003, thus making Sears liable for this defective tire if any one of them is proved. Among the claims are that Sears:

1) participated in the design of the tire – § 82.003(a)(1), Complaint paragraphs 41-43; 45, 54;

2) exercised substantial control over the content of a warning or instruction that accompanied the tire; that the warning or instruction was inadequate; and the plaintiffs' harm resulted from the inadequacy of the warning or instruction – § 82.003(a)(1), Complaint paragraphs 53, 57;

3) made an express factual representation about an aspect of the product; the representation was incorrect; the claimant relied on the representation in obtaining or using the product; and if the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm – § 82.003(a)(1), Complaint paragraphs 51-52; and

4) actually knew of a defect in the tire at the time it sold/installed the tire on plaintiffs'

vehicle – § 82.003(a)(1), Complaint paragraphs 44-52, 54-55, 57.

Complaint [Document 1], Count III. Any of these four "categories" proved alone or in combination is a recognized exception to the seller's immunity invoked by Sears in its motion.

The allegations that Sears participated in the design of the tire and that Sears exercised control over the warning that would accompany the tire, stem in part from the fact that the Sears name is molded on the sidewall. See Exhibit 1, photograph of the subject tire showing Sears' logo. The Sears logo is proprietary to Sears and at some point Sears must have approved or dictated the specific use of its logo, including the size, lettering, position, etc. A literal reading of Tex.Civ.Prac.Rem.Code 82.003(a)(1), which by its terms includes any "participat[ion] in the design" of the product, permits the case to go forward against Sears on this evidence alone. Sears may argue that only design input related to the failure itself counts, but the statute does not say that and plaintiffs' literal interpretation makes sense because a party with the bargaining power to have its name molded into a product generally has the power to dictate/review other design choices in the product – whether or not that power is exercised. Obviously Sears is not just any random reseller of Cooper tires. Sears has a relationship with Cooper, and directs Cooper to manufacture tires that appear to consumers to be approved by – if not manufactured by – Sears. Further, a plain reading of the words "participated in the design," could also include reviewing and approving a product design. Plaintiffs expect to learn that Sears at the very least had input into which tire design was used to carry the Sears name. It seems hard to believe that Sears left it to Cooper to pick any tire at random to bear the Sears logo. Again, this would involve participation by Sears into the design of the product it sold, in that Sears could chose a wholly different design for its Sears tire. But plaintiffs acknowledge they do not have definitive proof of the full extent of Sears' participation in

the design at this time. To obtain this information, discovery was served on Sears back in July of 2008 (Exhibit 2, Sears' objections incorporating the requests). As shown therein, a number of requests sought specific information concerning Sears' participation in the design of the tire. For example, Request 5 sought, "all documents reflecting the role of Sears if any in preparing, authoring, contributing to, suggesting, or participating in the creation of the specifications, engineering design and/or manufacturing methodology for the subject tire. Exhibit 2. Request 15 sought "all documents reflecting any review and/or approval by Sears of any aspect of the manufacture or design of the subject tire." And so on.

Exhibit 2 reflects numerous separate requests for information from Sears relative to other exceptions to Section 82.003 as well. The discovery sought to ferret out Sears' actual knowledge of hazards in Cooper tires in general, including the tire at issue in this case by seeking materials related to Sears' own safety analysis of the tire brand (e.g., requests 18-20), and items such as comparative warranty return data for other brands and the total return rates for the subject brand associated with failures (e.g., requests 21-32). All of the 82.003 exceptions outlined above are addressed directly or indirectly in the requests for production.

As can be seen, plaintiffs actively sought information from Sears necessary to prove their case. Sears initially objected (improperly as explained in the motion to compel), but then agreed to produce the information as explained below. Plaintiffs held off filing a motion to compel as a result, and Sears' motion is thus improper.

  IV. <u>Sears' Motion is Premature and Should be Continued or Denied on that Basis</u>

    A. <u>It is inappropriate for Sears to seek summary judgment on factual matters requested in discovery that Sears has stonewalled, and for which Sears deliberately avoided a motion to compel by promising complete responses.</u>

Plaintiffs incorporate by reference their motion to compel against Sears and brief in support, filed by plaintiffs three days after Sears filed its motion for summary judgment [Document 66]. As reflected therein and as discussed above, plaintiffs served comprehensive discovery on Sears in July of 2008. Sears responded with a litany of objections. Plaintiffs met and conferred with Sears to avoid a motion to compel, and an agreement was reached that Sears would provide complete responses with a narrowed time-frame for certain requests. Sears initially promised its responses by January 9, 2009, and then again indicated it would provide them at the end of January. During the latter part of January and into February, Sears' counsel indicated that he was compiling information and needed "just a little more time." Then on February 16, 2009, Sears filed the herein motion. Plaintiffs' counsel relied to their detriment on Sears' counsel's representations that complete discovery responses were forthcoming, and now face this summary judgment motion that argues in essence that plaintiffs do not have the information requested of Sears in discovery to prove their case. Sears' position that it should benefit from its own delays and broken agreements is disingenuous.

Fed.R.Civ.P. 56(f) specifically provides that a Court may deny or order a continuance of a motion for summary judgment if a party opposing the motion shows by affidavit that, for specified reasons, she cannot present facts essential to justify its opposition. To comply with this section, plaintiffs' attach an affidavit of counsel, and also an affidavit from the primary plaintiff in this action, Maria Rodriguez Trenado. See Exhibits 3 and 4, respectively.

As addressed above and in the attached affidavits, the central allegations against Sears in this case require as proof information that only Sears can provide. Plaintiffs are able to offer some circumstantial evidence of some of the allegations, but ultimately the primary source of proof will

be Sears itself. Once the discovery Sears has repeatedly agreed to answer is answered (voluntarily or by Court Order), plaintiffs anticipate taking depositions of Sears employees relative to the information supplied. Follow up requests may also be necessary depending on what is learned. This would have all been done months ago had Sears answered the discovery under the Rules, and had Sears' counsel not slyly convinced plaintiffs' counsel to give Sears more time to answer.

Sears should not be allowed to benefit from its own stonewalling in discovery, especially where as here Sears' counsel agreed both orally and in writing to provide responsive documentation and convinced plaintiffs to wait to file their motion to compel.

### B. Plaintiffs have established the need for further discovery

Plaintiffs' response to Sears' motion that more discovery is needed is specific in scope, and complies with the letter and intent of Rule 56(f). In this regard, plaintiffs have outlined above the specific overdue discovery which is expected to yield evidence sufficient to prove the specific elements of their case in chief. This is not a situation where plaintiffs are saying in broad brush terms that a "few more depositions" or some unspecified future written discovery may reveal something that will give them some evidence to prove their case. Instead, plaintiffs have identified in this response specific information that has been requested of Sears that Sears has agreed to produce but has failed to produce, and that goes to the heart of the claims against Sears. Plaintiffs have also explained and shown that the information sought is not generally available from other sources.

### V. Circumstantial Evidence Sufficient to Defeat the Motion

As an alternative position, plaintiffs do have available certain circumstantial evidence that supports their claims. The issue of participation in the tire design is addressed above. The Sears

name branded on the sidewall of the tire is circumstantial evidence that Sears had a role in the design of the tire. Additionally, circumstantial evidence exists in the form of evidence related to Cooper Tire failure rates which supports the "actual knowledge of a defect" exception found in Section 82.002(6)(a)-(b), e.g., that Sears must have known from warranty return rates, lawsuits, claims, and similar internal sources that the Cooper tires it was selling were failing at increasing high rates. Plaintiffs previously filed the affidavit of their tire expert Troy Cottles (Exhibit 5 hereto), who stated among other things:

- Cooper tires manufactured prior to 2000, regardless of size, plant of manufacture, or date of manufacture, are similarly designed and share similar design defects to the ones I have identified in this case. I have inspected and analyzed numerous Cooper tires, including 14, 15, 16 and 17 inch tires and tires of 185-275 millimeters in width. These tires were designed with insufficient levels of antidegradants in the belt skim stocks and no belt wedges, which serve to absorb stresses at the belt edges. Tires manufactured after January 1, 2001, including the Trenado tire, still used the belt construction without belt wedges, which was among the design defects that I found in this case (Exhibit 5, paragraph 9);

- The typical failure mode in Cooper tires, regardless of size, plant of manufacture or date of manufacture, is the same - belt-leaving-belt separation. The belt-leaving-belt separations that I have seen in Cooper tires begin as belt edge separation at the edge of the second, or top, belt. They generally occur after several years of operation (Exhibit 5, paragraph 11);

- In the mid-1990's, Cooper began to see an increase in the incidents of belt/belt detachments in its main line tires, particularly in those states with hot climates. This trend was not limited to only passenger tires or light truck tries, but involved both (Exhibit 5, paragraph 13).

Mr. Cottles' sworn affidavit is competent evidence that Cooper designs were defective across the board, and that there were clear observable tread separation failure trends in Cooper tires that would have been observable to a retailer of Cooper tires such as Sears, especially in hot states such as Texas. Mr. Cottles also explains in his affidavit that tread separation failures are hazardous and

cause for concern. The subject Cooper passenger tire was sold/installed by Sears in 2003, which was several years after the failure trend identified by Mr. Cottles first appeared so Sears had plenty of time to have observed the trend. This creates a genuine issue of fact that Sears – a national retailer of Cooper brands who has sold hundreds of thousands or more Cooper tires in hot states including Texas – was actually aware of a propensity for Cooper tires to fail as this one did.

"Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in any case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir.1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Taylor v. Russell*, 181 F.Supp.2d 668, 670 (E.D. Tex. 2001); *Kalimah v. City of McKinney, Texas*, 213 F.Supp.2d 698 (E.D. Tex. 2002). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See Id.; Hutchison v. Brookshire Brothers, Ltd.*, 284 F.Supp.2d 459 (E.D. Tex. 2003).

While admittedly plaintiffs expect to develop evidence in discovery which is stronger than

the circumstantial evidence outlined above, the evidence outlined above with all inferences being drawn in plaintiffs' favor is sufficient to defeat Sears' request for summary judgment.

## CONCLUSION

Sears was asked in discovery to produce information central to plaintiffs' claims against Sears. Sears agreed to produce the information, but asked for more time. Sears then filed a motion for summary judgment complaining in essence that plaintiffs do not have the information requested of Sears that Sears agreed to provide. Sears' attempt at summary judgment if permitted would reward Sears for its own discovery abuse including its broken promises to provide complete responses to the discovery. A ruling in Sears' favor would also discourage future litigants from honoring requests by opposing counsel for additional time to answer discovery, increasing the filing of unnecessary motions to compel. This situation triggers Fed.R.Civ.P. 56(f). Alternatively, plaintiffs' have come forward with sufficient circumstantial evidence to defeat Sears' motion.

Respectfully submitted:

    s/Hugh N. Smith
Hugh N. Smith, Attorney-in-Charge
Florida Bar Number: 120166
Southern District Number: 853242
SMITH & FULLER, P.A.
455 North Indian Rocks Road, Suite A
Belleair Bluffs, Florida 33770
(727) 252-5252
(727) 252-5255 (facsimile)
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed this March 5, 2009. Notice of this filing will be sent to all parties via operation of the District Clerk's electronic filing system. For any party in this case that does not have counsel or has counsel who is not registered with the District Clerk's electronic filing system, service will be made via certified mail, return receipt requested.

    s/Hugh N. Smith