## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **MARIA RODRIGUEZ TRENADO,** | § | |
| **individually and as representative of** | § | |
| **the estates of her spouse,** | § | |
| **MARTIN RAMON TRENADO, deceased, and** | § | |
| **of her son JOSE TRENADO, deceased, and** | § | |
| **EMANUEL TRENADO, individually, and** | § | |
| **JESSICA TRENADO, individually,** | § | |
| | § | **CIVIL ACTION** |
| | § | |
| | § | **4:08 CV 249** |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **COOPER TIRE & RUBBER** | § | |
| **COMPANY, an Delaware Corporation,** | § | |
| **and SEARS, ROEBUCK AND CO.,** | § | |
| **d/b/a SEARS AUTO CENTER,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

The Plaintiffs, Maria Rodriguez Trenado, individually and as representative of the estates of her spouse, Martin Ramon Trenado, deceased, and of her son Jose Trenado, decased, and Emanuel Trenado, individually, and Jessica Trenando, individually, and file this their First Amended Complaint against Cooper Tire & Rubber Company ("Cooper") and Sears, Roebuck and Co. d/b/a Sears Auto Center ("Sears"), and state as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.     Jurisdiction is founded on diversity of citizenship.  Each of the named plaintiffs and

decedents is (or was at the time of their deaths) a citizen of the United States, domiciled in

the city of Houston, Texas, and thus a citizen of Texas.  The Defendant Cooper  is a U.S. corporation incorporated in Delaware with its principal place of business in Ohio.  The Defendant Sears is a New York corporation with its principal place of business in Illinois.  No plaintiff herein is a resident, citizen, or domicile of Delaware, Ohio, New York or Illinois.  The matter in controversy exceeds, exclusive of interest and costs and fees, the sum specified by 28 U.S.C. §1332, to wit $75,000.00.

2. Plaintiff Maria Rodriguez Trenado (hereinafter "Maria Trenado"), is a citizen of Houston, Texas and was the legal spouse of Martin Ramon Trenado ("Martin Trenado") at the time of his death, was the natural mother of Jose Trenado (the son of Martin Trenado), and is the representative of the estates of Martin Trenado and Jose Trenado,  and brings this action both individually and in her representative capacities for all legal beneficiaries of the Estates of Martin Trenado and Jose Trenado.  Prior to their deaths, Martin Trenado and Jose Trenado were citizens of the United States, with their residence and domicile in Houston, Texas.

3. Plaintiff Emanuel Trenado is the natural child of Maria Trenado and Martin Trenado (deceased), and is and at all relevant times was a United States citizen residing and domiciled in Houston, Texas.

4. Plaintiff Jessica Trenado is the natural child of Maria Trenado and Martin Trenado (deceased), and is and at all relevant times was a United States citizen residing and domiciled in Houston, Texas.

5. At all times material hereto, Defendant Cooper was a Delaware corporation with its principal place of business in Ohio.

6.     Cooper is and was at all relevant times a foreign corporation licensed to do business in the State of Texas. Cooper does business in the State of Texas, city of Houston, by advertising and selling its products in this jurisdiction.

7.     Cooper with the participation of Sears, designed, developed, tested, manufactured and distributed the tire which is the subject of this litigation, a Cooper Sears Guardsman Trailhandler AP extra load P235/75R15 M+S, R speed rating tire bearing DOT number UTHLLCE4003, manufactured in the 40th week of 2003 at Cooper's Texarkana, Arkansas plant (the "subject tire").

8.     At all times material hereto, Defendant Sears was a New York corporation with its principal place of business in Illinois, doing business in the State of Texas through a variety of distributors and retail stores.

9.     Sears at all relevant times specifically did and does business in the State of Texas, City of Houston, by among other things operating and maintaining an automotive and tire service center known as Sears Auto, Store Number 6247, located at 4111 Fannin Street, Houston, Texas ("Sears Auto"). The subject Sears Auto location performs automotive and tire repair, installation, maintenance, and inspection services for the consuming public, including the sale of tires which carry the Sears brand name even though the tires are in fact manufactured by others with the participation of Sears, including Cooper. The subject tire in this case was molded with the "Sears" name on the sidewall, leading consumers to believe that the tire was a Sears product or at least that the product met Sears' design, quality and safety standards.

10.     The subject Cooper tire carrying the Sears name was sold to the Trenado family and installed on their 1991 Chevy Van by the Sears Auto store Number 6247 in December of 2003. It was inspected by Sears Auto on subsequent occasions and was not replaced or recommended to

be replaced by Sears Auto when three new tires manufactured by a different company were sold by Sears Auto and installed on the subject Chevy Van in July of 2005.

11.    On or about July 21, 2007, Emanuel Trenado was operating the Trenado family's 1991 Chevy Van equipped with the subject Cooper tire sold by Sears and carrying the Sears name, in San Luis Potosi, Mexico, on Camino national road, when the subject tire (mounted at the right rear position of the vehicle) catastrophically failed by a mechanism known as tread/belt or belt/belt separation.  As a result of the tire failure, the vehicle went out of control and crashed.  Martin Trenado and Jose Trenado were both killed as a result of injuries sustained during the crash.  Maria Trenado, Jessica Trenado, and Emanuel Trenado were seriously injured.

12.    At all times from the date of purchase of the subject tire until the moment of the tire failure on July 21, 2007, the subject tire was properly maintained and was used in normal operation and was used and maintained in a manner reasonably foreseeable, expected, intended, marketed, and promoted by Cooper and Sears.  The subject tire malfunctioned in the absence of any adverse outside conditions, road hazards or interference from any other vehicle or obstruction, and while being used in a normal and foreseeable manner.  The tire had legal tread depth at the time it failed.

13.    As a direct result of the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination proximate and producing causes of the tire failure and vehicle crash made the basis of this lawsuit, plaintiff Maria Trenado sustained serious and permanent physical and mental injuries in the accident, along with physical and mental pain and suffering, mental anguish, and economic damages sustained in the past and that are reasonably expected to be sustained in the future, including

medical expenses, property damage, a loss of income/loss of earning capacity, along with other damages to be proved at trial.

14.     As a direct result of the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination  proximate and producing causes of the tire failure and vehicle crash made the basis of this lawsuit, plaintiff Emanuel Trenado sustained serious and permanent physical and mental injuries in the accident, along with physical and mental pain and suffering, mental anguish, and economic damages sustained in the past and that are reasonably expected to be sustained in the future, including medical expenses, property damage, a loss of income/loss of earning capacity, along with other damages to be proved at trial.

15.     As a direct result of the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination proximate and producing causes of the tire failure and vehicle crash made the basis of this lawsuit, plaintiff Jessica Trenado sustained serious and permanent physical and mental injuries in the accident, along with physical and mental pain and suffering, mental anguish, and economic damages sustained in the past and that are reasonably expected to be sustained in the future, including medical expenses, property damage, a loss of income/loss of earning capacity, along with other damages to be proved at trial.

## WRONGFUL DEATH DAMAGES

16.     As a direct result of the accident made the basis of this suit and the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were  independently and in combination  proximate and producing causes of the tire failure and vehicle crash and death

of Martin Trenado made the basis of this lawsuit, Maria Trenado, has incurred in the past and/or will incur in the future, and is entitled to recover the following damages:

a.   **Pecuniary Loss:**  The loss of care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Maria Trenado in reasonable probability would have received from Martin Trenado had he lived;

b.   **Loss of Companionship and Society and Consortium:**  The loss of the positive benefits flowing from the love, comfort, companionship, society and marital consortium that Maria Trenado, in reasonable probability, would have received from Martin Trenado had he lived;

c.   **Mental Anguish:**  The emotional pain, torment and suffering that has been and will be experienced by Maria Trenado because of the death of Martin Trenado;

d.   **Loss of Inheritance:**  The loss of the present value of the assets that Martin Trenado, in reasonable probability, would have added to the Estate and left at his natural death to Maria Trenado; and

e.   **Punitive Damages**: punitive damages against Cooper.

17.   As a direct result of the accident made the basis of this suit and the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination proximate and producing causes of the tire failure and vehicle crash and death of Martin Trenado made the basis of this lawsuit, Emanuel Trenado and Jessica Trenado, have incurred in the past and/or will incur in the future, and are each entitled to recover separately the following damages:

a.  **Pecuniary Loss:**  The loss of care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value, excluding loss of inheritance, that each in reasonable probability would have received from Martin Trenado had he lived;

b.  **Loss of Companionship and Society:**  The loss of the positive benefits flowing from the love, comfort, companionship and society that each, in reasonable probability would have received from Martin Trenado had he lived;

c.  **Mental Anguish:**  The emotional pain, torment and suffering that has been and will be experienced by each because of the death of Martin Trenado;

d.  **Loss of Inheritance:**  The loss of the present value of the assets that Martin Trenado, in reasonable probability, would have added to the Estate and left at his natural death to each; and

e.  **Punitive Damages**: punitive damages against Cooper.

18.  As a direct result of the accident made the basis of this suit and the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination proximate and producing causes of the tire failure and vehicle crash and death of Jose Trenado made the basis of this lawsuit, Maria Trenado has incurred in the past and/or will incur in the future, and is entitled to recover the following damages:

a.  **Pecuniary Loss:**  The loss of care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value, excluding loss of inheritance, that she in reasonable probability would have received from JoseTrenado had he lived;

b.   **Loss of Companionship and Society:**  The loss of the positive benefits flowing from the love, comfort, companionship and society that she, in reasonable probability would have received from her son Jose Trenado had he lived;

c.   **Mental Anguish:**  The emotional pain, torment and suffering that has been and will be experienced by her due to the death of Jose Trenado;

d.   **Loss of Inheritance:**  The loss of the present value of the assets that Jose Trenado, in reasonable probability, would have added to the Estate and left at his natural death; and

e.   Punitive Damages: punitive damages against Cooper.

## SURVIVAL DAMAGES

19.   As a direct result of the accident made the basis of this suit and the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in combination proximate and producing causes of the tire failure and vehicle crash and death of Martin Trenado made the basis of this lawsuit, the Estate of Martin Trenado through its representative Maria Trenado, is entitled to recover the following damages:

a.   **Pain and Mental Anguish:**  The conscious physical pain and emotional pain, torment and suffering experienced by Martin Trenado before his death as a result of the occurrence in question;

b.   **Funeral and Burial Expenses:**  The reasonable amount of expenses for funeral and burial expenses for Martin Trenado reasonably suitable to his station in life; and

c.   **Punitive damages**: Punitive damages against Cooper.

20.   As a direct result of the accident made the basis of this suit and the acts and/or omissions of Cooper and Sears described elsewhere in this Complaint which were independently and in

combination proximate and producing causes of the tire failure and vehicle crash and death of Jose Trenado made the basis of this lawsuit, the Estate of Jose Trenado through its representative Maria Trenado, is entitled to recover the following damages:

a.   **Pain and Mental Anguish:**  The conscious physical pain and emotional pain, torment and suffering experienced by Jose Trenado before his death as a result of the occurrence in question;

b.   **Funeral and Burial Expenses:**  The reasonable amount of expenses for funeral and burial expenses for Jose Trenado reasonably suitable to his station in life; and

c.   **Punitive Damages**:  Punitive Damages against Cooper.

## COUNT I - NEGLIGENCE AGAINST COOPER

21.   This is an action for damages against Cooper Tire for negligence.

22.   Plaintiff reallege paragraphs 1 through 20, above.

23.   The tread/belt separation of the Cooper tire on the subject 1991 Chevy Van mounted in the right rear position (passenger's side) was a direct and proximate result of the negligent design and/or manufacture of the subject tire by Defendant Cooper.

24.   Cooper's negligence in connection with the design of the subject tire consists of, but is not limited to, the following:

A.   The use of insufficient amounts of halobutyl rubber in the inner liner compound which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure causing damage to the tire's integrity through oxidation.

B.      The use of an inner liner of insufficient ply which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure  causing damage to the tire integrity through oxidation.

C.      The use of inadequate antioxidants and antiozonants in the belt coat skim compound which rendered the tire susceptible to degradation and incapable of resistance to the effects of tire aging, heat and flexion during foreseeable, normal road operation of the tire.

D.      The failure to use a belt wedge or belt edge gum strip at the outside edges of the tire structure between the number one and number two steel belts to defuse stress and dissipate heat in order to prevent tread/belt detachments.

E.      The use of an unbalanced belt construction in the steel belts which does not allow the number two steel belt to maintain the tread contour rather than having the steel belts follow the contour of the carcass plies.

F.      The use of a high temperature, fast cure time of the tire that shortens the life of the tire from a tire durability standpoint so that it is not designed to wear out before the tire falls apart.

G.      The failure to use a nylon cap or spiral nylon over wrap (SNOW) atop the number two steel belt to promote late life tire durability.

H.      Use of insufficient under tread below the tread layer.

I.      Use of an antidegradant system in compound 525D (belt coat skim stock) that was untested at the time of the manufacture of the tire.

J.      Production of a tire with an adhesion failure.

25.   Cooper's negligence in connection with the manufacture of the subject tire consists of, but is not limited to, the following:

    A.   The production of a tire with belt snaking and trapped air.

    B.   The production of a tire with irregularities in belt spacing that contributed to stresses in the tire.

    C.   The production of a tire with an improper bond between wire and skim compound at the tire when the tire was cured.

    D.   The production of a tire with aged components which hindered proper bonding of the belt skims as evidenced by liner pattern marks.

    E.   The production of a tire with an adhesion failure.

26.   Cooper's further negligent design and/or manufacturing practices that were used in the production of the failed tire in this case which were a direct and proximate cause of the failure consisted of, but were not limited to, the following:

    A.   Undue reliance on a limited design and development engineering staff.

    B.   Significant use of competitive benchmarking in chemical analysis of competitive tires, but little emphasis on construction techniques.

    C.   A lack of concern for tire performance because Cooper's customers were perceived by Cooper as predominately driving older vehicles and were considered by Cooper to be of lower socio-economic standing.

    D.   Cooper's quality philosophy was based on human inspection with an intent to repair rather than engineer out problems.

    E.   Failure to maintain pristine conditions on the tire building floor.

F.    Inadequate inspection at all phases of tire production, including final inspection, due, at least in part, to staff reductions and inadequate training of inspection personnel.

G.    Curtailment or elimination of x-ray technology as part of the inspection process.

H.    Failure to follow company mandated policy, rules and regulations relating to tire quality.

I.    The excessive and dangerous use of solvents to increase stickiness or tack in dry stock during the building process of tires.

J.    Failure to maintain temperature and humidity control in critical tire building areas and operations.

K.    Utilization of scrap or rejected stock or materials in building tires.

27.   In addition to the above-described design and manufacturing defects, Defendant Cooper negligently warned or failed to warn the decedents or the surviving plaintiffs of the defects in the subject tire about which Cooper either knew or should have done.

28.   At the time the subject tire was manufactured, safer alternative designs existed which would have prevented or significantly reduced the risk of the subject accident without substantially impairing the tire's utility. Such alternative designs were economically and technologically feasible at the time the tire left the control of Cooper by the application of existing or reasonably achievable scientific knowledge.

29.   In designing and manufacturing the subject tire and in failing to warn consumers of the dangers in its tire, Cooper also acted with gross negligence. Specifically, Cooper had actual knowledge of an undue propensity for the subject tire to fail catastrophically by tread separation failure while the tire was still by outward appearances safe and legal to use on the highways, and that a tread separation failure would have an undue likelihood of causing

serious injury or death to the vehicle occupants.  Cooper had actual knowledge that its tires including the subject tire were overly prone to this particular failure mode, and Cooper had actual knowledge that serious injuries and deaths could be prevented by incorporation of reasonable and feasible design alternative.   Cooper was aware of an extreme risk to life of limb of its consumers associated with known defects in the subject tire, and failed to act appropriately in response to the known hazard.     Therefore, Cooper is also liable for exemplary and punitive damages.

30.      As a direct and proximate result of the negligence and other wrongful conduct of Defendant Cooper, plaintiffs (in their various individual and representative capacities stated above) have been damaged and have sustained losses as previously described, and are entitled to the damages set forth above in addition to punitive damages

WHEREFORE, Plaintiffs each demand judgment for damages against Cooper for their actual damages and for punitive damages, together with the costs of suit incurred in the trial and appellate courts, prejudgment interest on all recoverable damages for which prejudgment interest can be applied, and such other and further relief as the Court deems appropriate.

## COUNT II-STRICT LIABILITY AGAINST COOPER TIRE

31.    This is an action for damages against Defendant Cooper for strict liability.

32.    Plaintiff realleges paragraphs 1 through 20, above.

33.    The subject steel-belted radial tire manufactured and/or distributed and placed in the stream of commerce by Defendant Cooper was unfit and unsafe for its intended uses and purposes because of its design.  Such design defects existed at the time the subject tire left the possession of the Defendant.

34.    Those design defects included, but were not limited to, the following:

A.   The use of insufficient amounts of halobutyl rubber in the inner liner compound which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure causing damage to the tire integrity through oxidation.

B.   The use of an inner liner of insufficient ply which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure  causing damage to the tire integrity through oxidation.

C.   The use of inadequate antioxidants and antiozonants in the belt coat skim compound which rendered the tire susceptible to degradation and incapable of resistance to the effects of tire aging, heat and flexion during foreseeable, normal road operation of the tire.

D.   The failure to use a belt wedge or belt edge gum strip at the outside edges of the tire structure between the number one and number two steel belts to defuse stress and dissipate heat in order to prevent tread/belt detachments.

E.   The use of an unbalanced belt construction in the steel belts which does not allow the number two steel belt to maintain the tread contour rather than having the steel belts follow the contour of the carcass plies.

F.   The use of a high temperature, fast cure time of the tire that shortens the life of the tire from a tire durability standpoint so that it is not designed to wear out before the tire falls apart.

G.   The failure to use a nylon cap or spiral nylon over wrap (SNOW) atop the number two steel belt to promote late life tire durability.

H.   Use of insufficient under tread below the tread layer.

I.  Use of an antidegradant system in compound 525D (belt coat skim stock) that was untested at the time of the manufacture of the tire.

J.  Production of a tire with an adhesion failure.

35.  The Cooper steel belted radial tire that is the subject of this suit manufactured/and or distributed by Cooper along with Sears was also unfit and unsafe for its intended uses and purposes because of defects inherent in its manufacture.

36.  These manufacturing defects include, among other things, a lack of proper adhesion between the two steel belts and/or between the steel belts and the surrounding materials to prevent them from separating under expected and anticipated road conditions during normal use, and all of the items delineated in paragraphs 25 through 26, above.

37.  At all times material to this complaint, Defendant Cooper inadequately warned or failed to warn decedents or the surviving plaintiffs or consumers in general of the design and manufacturing defects which Defendant Cooper knew or should have known to exist in the subject tire. The inadequate warning or failure to warn was itself a defect in the tire.

38.  At the time the subject tire was manufactured, safer alternative designs existed which would have prevented or significantly reduced the risk of the subject accident without substantially impairing the tire's utility. Such alternative designs were economically and technologically feasible at the time the tire left the control of Cooper by the application of existing or reasonably achievable scientific knowledge.

39.  In designing and manufacturing the subject tire and in failing to warn consumers of the dangers in its tire, Cooper also acted with gross negligence. Specifically, Cooper had actual knowledge of an undue propensity for the subject tire to fail catastrophically by tread separation failure while the tire was still by outward appearances safe and legal to use on the

highways, and that a tread separation failure would have an undue likelihood of causing serious injury or death to the vehicle occupants.  Cooper had actual knowledge that its tires including the subject tire were overly prone to this particular failure mode, and Cooper had actual knowledge that serious injuries and deaths could be prevented by incorporation of reasonable and feasible design alternative.   Cooper was aware of an extreme risk to life of limb of its consumers associated with known defects in the subject tire, and failed to act appropriately in response to the known hazard.     Therefore, Cooper is also liable for exemplary and punitive damages.

40.    As a direct and proximate result of the dangerous, defective and hazardous design and/or manufacture of the subject tire which was designed and manufactured and distributed by Defendant Cooper, plaintiffs (in their various individual and representative capacities stated above) have been damaged and have sustained losses as previously described, and are entitled to punitive damages.

WHEREFORE, Plaintiffs each demand judgment for damages against Cooper for their actual damages and punitive damages, together with the costs of suit incurred in the trial and appellate courts, prejudgment interest on all recoverable damages for which prejudgment interest can be applied, and such other and further relief as the Court deems appropriate.

## COUNT III - NEGLIGENCE AGAINST SEARS

41.    This is an action for damages against Defendant Sears for negligence.

42.    Plaintiff realleges paragraphs 1 through 20, above.

43.    Prior to the installation of the subject tire on plaintiffs' vehicle, Sears entered into a business relationship with Cooper whereby Sears selected Cooper to manufacture tires with the design and other participation of Sears, carrying the Sears brand name for resale to the public.

44.     Sears had a duty to take reasonable steps to verify that the manufacturing, design and quality standards for the company it choose to build the subject tire with Sears' participation, were reasonably safe.

45.     Additionally or in the alternative, Sears as a provider of automobile tire service and installation for consumers for profit, including tires bearing its own name designed and manufactured to Sears' specifications/specifications arrived at with Sears' participation, at all relevant times had a duty to the public to perform its services, including the selection of new tires to install on consumers' vehicles, with due care.

46.     At all relevant times, Sears knew or should have known that one of the most dangerous types of tire failures that can occur on a motor vehicle, especially on a van or SUV, is a rear tire tread separation a.k.a. belt/belt separation failure.

47.     At the time Sears selected and recommended its Sears branded Cooper tire to install on plaintiffs' vehicle, it had been only a couple of years since the well publicized Firestone recall of millions of Wilderness AT and ATX tires that demonstrated an unreasonable propensity for tread separation failure.  As a result of the well publicized events surrounding that recall, as the result of readily available industry literature on the subject, and/or as a result of Sears' own experiences, Sears knew or should have known that selecting a tire for consumers which does not pose an unreasonable tread separation failure hazard is critically important for customer safety.   Sears fell below the applicable standard of care in participating in the manufacture of a tire which was unreasonably prone to tread separation failure and thus defective. Alternatively, Sears failed to conduct adequate research on its own to determine that the design it choose for the Sears/Cooper tire sold to the plaintiffs was reasonably safe and not overly prone to tread separation failure.

48.   At all relevant times, Sears knew or should have known that retailers such as itself, along with tire manufacturers and the U.S. government, can and should rely upon tire return data and failure rates as one method to determine whether particular designs or brands are hazardous to consumers.

49.   At all relevant times, Sears knew or should have known that consumers rely upon retailers such as Sears Auto to select and install tires on their vehicles that are not overly prone to fail catastrophically while being operated on the highway.

50.   As a high volume national supplier of tires to consumers, including tires which Sears selected to be branded with its name, Sears had the means, resources and information available to determine that Cooper brand tires including but not limited to the specific tire sold to plaintiffs, had an unreasonable rate of failure by tread separation.

51.   From it's long-standing business relationship with Cooper, and from other sources including return rate data, Sears knew that Cooper tires across broad tire lines exhibited tread separation failure rates at least as high if not higher than the recalled Firestone Wilderness AT and ATX tires referenced above that were responsible for hundreds of deaths and thousands of serious injuries.  Sears also knew that Cooper tires had a tendency to fail by tread separation in hotter climates such as Texas, just like the Firestone Wilderness AT and ATX tires that were recalled prior to the sale of the subject tire.

52.   Despite actual knowledge that Cooper tires were overly prone to tread separation failures and thus defective, including the Cooper tire molded with the Sears name sold to plaintiffs, Sears continued marketing the Cooper brand to its customers including the Cooper Sears Guardsman Trailhandler AP installed on the plaintiffs' vehicle herein.   Sears did so for

profit motive notwithstanding the known hazard to members of the consumer public including plaintiffs herein.

53.    Sears had actual or constructive knowledge prior to the time it installed the Cooper tire on the plaintiffs' vehicle, that other manufacturers' designs and brands it sold regularly had significantly greater resistance to tread separation failures than the Cooper brand, but Sears did not advise or warn the plaintiffs or other consumers generally of the safety difference between the products.    Instead, Sears negligently made express incorrect factual representations in its advertising, store literature, and otherwise that the price difference between the Cooper manufactured tires versus other more expensive brands was a matter of tread wear life (e.g., number of miles the tire would travel before wearing out), name recognition and/or high performance abilities, and not because the cheaper Cooper manufactured tires were more likely than better designed brands to suffer sudden catastrophic tread separation failure.    Decedents and plaintiffs relied on those incorrect factual representations to their detriment.

54.    Had decedents and/or plaintiffs been told that the tire sold was more likely to fail by catastrophic tread separation failure than other brands, and that the tire was cheaper at least in part because cost cutting decision had been made related to the tire's design, structure and compounds at the expense of safety, not simply due to issues of tread wear life and high speed performance, decedents and/or plaintiffs would have selected a safer brand and this accident would have been avoided.

55.    Sears had substantial control over the warning or instruction that would be given to consumers accompanying the Sears branded tires that were manufactured by Cooper with Sears' participation.    Nonetheless, Sears gave inadequate warning or instruction of the

potential hazards of the subject tire of which Sears knew or should have known.  In fact, Sears gave no warning or instruction at all that the subject tire was unreasonably prone to tread separation failure.  Sears was negligent for failing to warn/instruct the plaintiffs of the hazard of which it knew or should have known was unreasonably dangerous.

56.   Additionally or in the alternative, Sears was negligent for selecting and/or installing the subject tire in the first instance given what Sears knew or should have known concerning the dangerous propensity for tread separation failure of the product in whose design Sears participated.

57.   The subject tire was defective for the reasons set forth in paragraphs 24 through 28 above, and Sears, as an entity which participated in the design of the product, knew or should have known of those defects and was negligent for selling the defective product.

58.   Alternatively, the subject product was defective and unreasonably dangerous for the reasons set forth in paragraphs 33 through 37 above, which defects proximately caused the injuries and damages alleged above, and Sears is liable for selling the defective product pursuant to Texas Statutes, Chapter 82, Section 003(a)(1).

59.   As a direct and proximate result of the negligence and other wrongful conduct of Defendant Sears described above, as a direct and proximate result of Sears' selling of a product of which Sears had actual knowledge of defect and hazard at the time of sale, and/or as a direct and proximate result of the sale of a defective and dangerous product in which Sears participated in the design, plaintiffs in their various individual and representative capacities stated above have been damaged and have sustained losses as previously described.

WHEREFORE, Plaintiffs each demand judgment for damages against Sears for their actual damages, together with the costs of suit incurred in the trial and appellate courts, prejudgment

interest on all recoverable damages for which prejudgment interest can be applied, and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY

Plaintiffs hereby demand a jury trial on all factual issues of their Complaint.

## PREJUDGMENT INTEREST

The above and foregoing acts and/or omissions of Defendants have caused damages to Plaintiffs and entitle Plaintiffs to prejudgment interest on the damages sustained.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs individually and in their various stated representative capacities, each demand judgment against Cooper and Sears for their actual damages, and for punitive damages against Cooper, together with the costs of suit incurred in the trial and appellate courts, prejudgment interest on all recoverable damages for which prejudgment interest can be applied, and such other and further relief as the Court deems appropriate.

Dated this 27th day of July, 2009.

　　　　　　　　　　__s/ Christopher J. Roberts_____
　　　　　　　　　　 Hugh N. Smith, Attorney-in-Charge
　　　　　　　　　　Florida Bar Number: 120166
　　　　　　　　　　Southern District Number: 853242
　　　　　　　　　　Christopher J. Roberts (pro hac)
　　　　　　　　　　Florida Bar Number: 0150525
　　　　　　　　　　SMITH & FULLER, P.A.
　　　　　　　　　　455 North Indian Rocks Road, Suite A
　　　　　　　　　　Belleair Bluffs, Florida 33770
　　　　　　　　　　(727) 252-5252
　　　　　　　　　　(727) 252-5255 (facsimile)
　　　　　　　　　　Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed this 27th day of July, 2009. Notice of this filing will be sent to all parties via operation of the District Clerk's

electronic filing system.  For any party in this case that does not have counsel or has counsel who is not registered with the District Clerk's electronic filing system, service will be made via certified mail, return receipt requested.


_____ s/ Christopher J. Roberts _____