IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA RODRIGUEZ TRENADO, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATES | § | |
| OF HER SPOUSE MARTIN RAMON | § | |
| TRENADO, DECEASED, AND OF HER | § | |
| SON JOSE TRENADO, DECEASED, | § | |
| AND EMANUEL TRENADO, | § | |
| INDIVIDUALLY, AND JESSICA | § | |
| TRENADO, INDIVIDUALLY, | § | |
| | § | CIVIL NO. 4:08-cv-249 |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| COOPER TIRE & RUBBER COMPANY, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendant Cooper Tire and Rubber Company's ("Defendant") Motion for Partial Summary Judgment on Plaintiffs' Negligence Claim (Docket Entry No. 92); Defendant's Opposed Motion for Partial Summary Judgment on Plaintiffs' Strict Liability Design Defect Claim (Docket Entry No. 93); Defendant's Motion for Summary Judgment on Emanuel Trenado's Negligence Per Se (Docket Entry No. 96); Plaintiffs Maria Rodriguez Trenado, individually and as representative of the estates of her spouse Martin Ramon Trenado and of her son Jose Trenado, Jessica Trenado, and Emanuel Trenado's (collectively, "Plaintiffs") Fed.R.Civ.P. 56

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 21.

Motion for Partial Summary Judgment on Specific Affirmative Defenses Plead by Defendant (Docket Entry No. 97); and Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims for Punitive Damages (Docket Entry No. 175).

The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Negligence Claim (Docket Entry No. 92) be **DENIED**; that Defendant's Opposed Motion for Partial Summary Judgment on Plaintiffs' Strict Liability Design Defect Claim (Docket Entry No. 93) be **DENIED**; that Defendant's Motion for Summary Judgment on Emanuel Trenado's Negligence Per Se (Docket Entry No. 96) be **DENIED**; that Plaintiffs' Fed.R.Civ.P. 56 Motion for Partial Summary Judgment on Specific Affirmative Defenses Plead by Defendant (Docket Entry No. 97) be **GRANTED IN PART, DENIED IN PART**; and that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims for Punitive Damages (Docket Entry No. 175) be **DENIED**.

## I.  <u>Case Background</u>

On July 21, 2007, Emanuel Trenado ("Emanuel") was driving his family's 1991 Chevrolet van in San Luis Potosi, Mexico, on El Camino national road.[2]  The right rear wheel of the vehicle was

---

[2]     Plaintiffs' Amended Complaint ("Amended Complaint"), Docket Entry No. 149, ¶ 11.

2

equipped with a tire manufactured by Defendant ("Subject Tire").[3]
When the Subject Tire failed, Emanuel lost control of the vehicle
and crashed.[4]  His father Martin Trenado ("Martin") and brother
Jose Trenado ("Jose") died from injuries sustained in the crash.[5]
Emanuel, his mother Maria Trenado ("Maria"), and his sister Jessica
Trenado ("Jessica") were injured.[6]

Plaintiffs initiated this action against Defendant[7] on January
18, 2008, in United States District Court for the Southern District
of Texas, Houston Division, pursuant to the court's diversity
jurisdiction.[8]  Plaintiffs alleged negligence and strict liability
causes of action based on alleged defects in the design and
manufacture of the Subject Tire.[9]  Plaintiffs seek actual and
punitive damages against Defendant.[10]

## II.  <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that

---

[3]      <u>Id.</u>

[4]      <u>Id.</u>

[5]      <u>Id.</u>

[6]      <u>Id.</u>

[7]      Defendant Sears, Roebuck and Company was dismissed from this suit on
October 30, 2009, leaving Defendant Cooper Tire and Rubber Company as the only
remaining defendant.  Plaintiffs' Unopposed Motion to Dismiss Co-Defendant Sears,
Docket Entry No. 165; Order of Dismissal Granting Plaintiffs' Motion to Dismiss
Sears, Docket Entry No. 166.

[8]      Plaintiff's Original Complaint ("Original Complaint"), Docket Entry
No. 1.

[9]      Amended Complaint, Docket Entry No. 149, ¶¶ 11, 21, 31.

[10]      <u>Id.</u> ¶¶ 16-20.

no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that

4

establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III. <u>Analysis</u>

5

A.   **Negligence**

Defendant seeks summary judgment on two allegations of Plaintiffs' negligence claim.[11]  Specifically, Defendant attacks Plaintiffs' allegations that (1) there was a "lack of concern for tire performance because [Defendant's] customers were perceived by [Defendant] as predominately driving older vehicles and were considered by [Defendant] to be of lower socio-economic standing" and that (2) Defendant was negligent by its "excessive and dangerous use of solvents to increase stickiness or tack in dry stock during the building process of tires."[12]  Defendant characterizes these allegations as individual negligence claims and requests the court to enter summary judgment in its favor stating that it was not negligent in either of these two ways.[13]

As do Plaintiffs, the court takes issue with Defendant's characterization of these factual allegations.  Summary judgment is used to "isolate and dispose of factually unsupported claims or defenses."  Celotex Corp., 477 U.S. at 323–24.  Defendant's request does no more than try to prevent the introduction of evidence at

---

[11]   Defendant's Motion for Partial Summary Judgment on Plaintiffs' Negligence Claims ("Defendant's SJ Motion on Negligence"), Docket Entry No. 92.

[12]   Amended Complaint, Docket Entry No. 149, ¶ 26(C), (I).  Defendant cites to the Original Complaint, but since filing its motion, Plaintiffs filed an Amended Complaint.  See Original Complaint, Docket Entry No. 1 (filed Jan. 18, 2008); Defendant's Motion for Partial Summary Judgment on Plaintiffs' Negligence Claims ("Defendant's SJ Motion on Negligence"), Docket Entry No. 92 (filed May 22, 2009); Amended Complaint, Docket Entry No. 149 (filed Sept. 25, 2009).  The paragraph numbering and sub-paragraph lettering for the negligence claims at issue in this motion are identical between the two complaints, however.

[13]   Defendant's SJ Motion on Negligence, Docket Entry No. 92, pp. 3–4.

trial supporting two specific allegations underlying Plaintiffs' negligence claim. Defendant's request is more appropriate for a motion in limine. Defendant may attack the evidence as it supports the elements of a claim on a motion for summary judgment but not the underlying individual factual allegations themselves. Preventing introduction of these two allegations will not remove the negligence claim from this case.

Accordingly, the court **RECOMMENDS** that Defendant's motion for partial summary judgment on Plaintiffs' negligence claims be **DENIED**.

## B. Strict Liability Claim of Design Defect

Defendant has moved for summary judgment on whether it is strictly liable for alleged design defects in the Subject Tire.[14] Defendant requests the court to rule separately on each of Plaintiffs' ten factual allegations in support of its claim that were written into the amended complaint. The court need not rule on each allegation, however; rather, the court need only determine whether Plaintiffs have presented enough competent evidence to prevent summary judgment against their design-defect claim. See Celotex Corp., 477 U.S. at 322. In other words, by challenging all of Plaintiffs' allegations, Defendant has effectively challenged Plaintiffs' entire cause of action. Plaintiffs therefore need only

---

[14]     Defendant's Motion for Partial Summary Judgment on Plaintiffs' Strict Liability Design Defect Claims ("Defendant's SJ Motion on Plaintiffs' Strict Liability Claim"), Docket Entry No. 93.

7

show that they have some evidence supporting each element of their claim, not that each factual allegation made under the claim has support.  Proving or disproving factual allegations is not proper for summary judgment; the court may only properly determine whether Plaintiffs have offered some proof on each element of each claim upon which Defendant has moved for summary judgment.  See, e.g., id. (stating, "If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.")[15]

Plaintiffs' amended complaint lists ten reasons why the Subject Tire was defectively designed.[16]  Under Texas statutory law,

---

[15]   Defendant requested partial summary judgment on two of many factual allegations made by Plaintiffs in support of their negligence claim; in contrast, Defendant here requested partial summary judgment on all of the allegations supporting Plaintiffs' strict liability design-defect claim.  Therefore, the court is unconstrained to rule on the merits of the design-defect claim, unlike with its determination of the negligence claim.

[16]   Defendant's SJ Motion on Strict Liability, Docket Entry No. 93, p. 3; Amended Complaint, Docket Entry No. 149, ¶ 34.  The allegations in the amended complaint are:

(1)   The use of insufficient amounts of halobutyl rubber in the inner liner compound which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure causing damage to the tire integrity through oxidation.

(2)   The use of an inner liner of insufficient ply which rendered the tire highly susceptible to the permeation of air from the air chamber which migrated throughout the rest of the tire structure causing damage to the tire integrity through oxidation.

(3)   The use of inadequate antioxidants and antiozonants in the belt coat skim compound which rendered the tire susceptible to degradation and incapable of resistance to the effects of tire aging, heat and flexion during foreseeable, normal road operation of the tire.

(4)   The failure to use a belt wedge or belt edge gum strip at the

when a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that: (1) there was a safer alternative design; and (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.  Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a); Hunter v. Ford Motor Co., Inc., ___ S.W.3d ___, No. 10-08-00128-CV, 2009 WL 3766333, at *2 (Tex. App.—Waco, Nov. 10, 2009, no pet. h.).  A claimant must not only meet the proof requirements of the statute but must show, under the common law, that the product was defectively designed so as to be unreasonably dangerous, taking into consideration the utility of the product and the risks involved in its use.  Hunter, 2009 WL 3766333, at *2 (citing Hernandez v. Tokai Corp., 2 S.W.3d 251, 257 (Tex. 1999)).

---

> outside edges of the tire structure between the number one and number two steel belts to defuse stress and dissipate heat in order to prevent tread/belt detachments.
>
> (5)   The use of an unbalanced belt construction in the steel belts which does not allow the number two steel belt to maintain the tread contour rather than having the steel belts follow the contour of the carcass plies.
>
> (6)   The use of a high temperature, fast cure time of the tire that shortens the life of the tire from a tire durability standpoint so that it is not designed to wear out before the tire falls apart.
>
> (7)   The failure to use a nylon cap or spiral nylon over wrap (SNOW) atop the number two steel belt to promote late life tire durability.
>
> (8)   Use of insufficient under tread below the tread layer.
>
> (9)   Use of an antidegradent system in compound 525D (belt skim stock) that was untested at the time of the manufacture of the tire.
>
> (10)  Production of a tire with an adhesion failure.

Amended Complaint, Docket Entry No. 149, ¶ 34.

A claimant must prove a design-defect claim with expert testimony. Hunter, 2009 WL 3766333, at *3 (citing Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 583 (Tex. 2006)).

### 1.   Safer Alternative Design

To meet the first prong of the statutory test, Plaintiffs must provide evidence that there was a safer alternative design to the Subject Tire, which itself consists of two required elements: (1) that the alternative design would have prevented or significantly reduced the risk of the claimant's damages without substantially impairing the product's utility, and (2) that the alternative design was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.   See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a)-(b).

Plaintiffs' expert on tire performance, design, and manufacturing, Troy Cottles ("Cottles"), has provided sufficient evidence to meet the summary judgment threshold on this requirement.[17]   Cottles has opined that there are at least six safer, alternative design elements that should have been in use on the Subject Tire: (1) application of a nylon cap ply or edge strips; (2) chemical modifications for better degradation resistance in the belt skim formulation; (3) application of a more

---

[17]   Plaintiffs' Response to Defendant's SJ Motions on Negligence and Strict Liability, Docket Entry No. 151.

robust belt wedge component to stabilize the belt ends and reduce heat, stress, and strain; (4) better shelf-life maintenance for tire components; (5) better control of belt placement; and (6) better consolidations and stitching procedures to evacuate trapped air and moisture between belt and other component layers.[18]  Cottles averred that, "The inherent weaknesses and defects [as described earlier in his affidavit] in this [Subject Tire] are contributory to its failure, and therefore a combination of alternative design measures were warranted to elevate the [Subject Tire's] overall endurance."[19]  He also opined that, "Had these been employed in the manufacture of the [Subject Tire] they would have either eliminated or significantly reduced the likelihood of failure."[20]  Furthermore, Cottles stated that the safer alternative designs that were available to Defendant at the time the Subject Tire was produced were both economically and technologically feasible for a tire manufacturer.[21]  The court has examined the exhibits submitted by Plaintiffs and determined that Plaintiffs have provided sufficient support for Cottles' opinions.[22]  Accordingly, Plaintiffs have

---

[18]    Id. at Ex. 4, Affidavit of Cottles, ¶ 45.  It appears to the court that elements (5) and (6), at least, would be better classified as manufacturing defects.  Regardless, Plaintiffs have, through Cottles, proposed a number of other safer, alternative design elements that would meet the requirements of this prong of the statute.

[19]    Id.

[20]    Id.

[21]    Id. ¶¶ 45-46.

[22]    See Plaintiffs' Response to Defendant's SJ Motions on Negligence and Strict Liability, Docket Entry No. 151, attached exhibits.

withstood summary judgment on this prong of the statutory test.

    **2.   Producing Cause**

To meet the second prong of the statutory test, Plaintiffs must also provide evidence that the defect was a producing cause of the personal injury, property damage, or death for which they seek recovery. <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a). "A producing cause is an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." <u>Flock v. Scripto-Tokai Corp.</u>, 319 F.3d 231, 238 (5th Cir. 2003) (citations and internal quotations omitted). "Producing cause is the cause-in-fact of the harm, meaning that a defendant's conduct must have been a substantial factor in bringing about the injury and that the injury would not have occurred but for the defendant's conduct." <u>Id.</u>

Cottles has opined that tire design defects caused the tire to fail.[23] Plaintiffs' expert on vehicle dynamics and accident reconstruction, Stephen M. Arndt ("Arndt"), has presented evidence that this failure caused the harm to Plaintiffs and that their injuries would not have occurred but for the failure of the Subject Tire.[24] Arndt opined that the failure of the Subject Tire caused a drag at that wheel position which pulled the vehicle to that side, causing a fundamental change in the way the vehicle reacted

---

[23]    <u>Id.</u> at Ex. 4, Affidavit of Cottles, ¶ 45.

[24]    Defendant's Motion to Exclude the Testimony of Arndt, Docket Entry No. 95, Ex. A, Report of Arndt, pp. 20-22.

to steering input.[25]   Because the driver, Emanuel, "had no way of
knowing that his van had fundamentally changed in the way it
behaves," his steering right to counter the left pull of the
vehicle caused the vehicle to "spin[] out" and crash.[26]

The court has examined the materials provided upon which Arndt
relied and has determined that sufficient evidence supports Arndt's
opinions.[27]   Accordingly, Plaintiffs have withstood summary judgment
on this prong of the statutory test.

### 3.   Unreasonably Dangerous

Finally, a claimant must show, under the common law, that the
product was defectively designed so as to be unreasonably
dangerous, taking into consideration the utility of the product and
the risks involved in its use.   Hunter, 2009 WL 3766333, at *2
(citing Hernandez, 2 S.W.3d at 257).   "The determination of whether
a product is unreasonably dangerous because of a defective design
is often one that involves factual disputes that a party is
entitled to have a jury resolve."   Hernandez, 2 S.W.3d at 260.   In
some cases, a risk-utility analysis may be resolved as a matter of
law, such as where the proposed alternate design would completely
preclude some of the uses for which the product was designed and to

---

[25]    Id. at 20, 22.

[26]    Id. at 22.

[27]    See Defendant's Motion to Exclude the Testimony of Arndt, Docket
Entry No. 95; Plaintiffs' Response to Defendant's Motion to Exclude the Testimony
of Arndt, Docket Entry No. 120; Defendant's Reply to Plaintiffs' Response to
Defendant's Motion to Exclude the Testimony of Arndt, Docket Entry No. 125.

which it was put.  Id. (citing Caterpillar, Inc. v. Shears, 911
S.W.2d 379 (Tex. 1995)).  "Even if a product's utility were less
severely impacted by a design change to reduce the risks associated
with the product's use, the issue of whether the product is
unreasonably dangerous as designed may nevertheless be a legal one
if reasonable minds cannot differ on the risk-utility analysis
considerations." Hernandez, 2 S.W.3d at 260-61. "[T]he fact that
a product design meets consumer expectations may substantially
influence or even be ultimately determinative on risk-utility
balancing in judging whether the omission of a proposed alternative
design renders the product not unreasonably safe." Id. (quoting
Restatement (Third) of Torts: Products Liability § 2 cmt. g
(1998)).

Here, there is no allegation that the alternative designs
proposed by Plaintiffs would completely preclude some of the uses
for which the Subject Tire was designed and to which it was put.
In other words, there are no allegations that the designs suggested
by Plaintiffs would have impaired the use of the Subject Tire in
any way.  In fact, Plaintiffs only expect that the changes would
have improved the longevity of the Subject Tire without detracting
from its usefulness.  Therefore, the court cannot say as a matter
of law that the product was not unreasonably dangerous, and
Plaintiffs are entitled to have a jury decide the matter.

A reasonable jury could find (1) that design defects caused

14

the tread belt separation and the accident, (2) that there were feasible, safer alternatives that would have corrected the alleged product deficiencies, and (3) that the Subject Tire's design was unreasonably dangerous.  Accordingly, the court **RECOMMENDS** that Defendant's motion for partial summary judgment on Plaintiffs' strict liability design-defect claim be **DENIED**.

## C.   Negligence Per Se

Defendant moves for summary judgment on its claim that Emanuel was negligent per se because he was driving his family's van at a speed in excess of the speed limit at the time the accident occurred.[28]

Plaintiffs first appear to argue that Texas law should not be used to decide the negligence per se standard by which Emanuel's actions must be judged.[29]  Presumably, Plaintiffs want this court to use Mexican law but fail to cite to any Mexican law or to make a cogent choice-of-law argument to this court.[30]  The statute that provides the standard of care here is that providing for the speed limit on the stretch of road where the accident occurred; however, the standard for assessing negligence per se is provided by law

---

[28]     Defendant's Motion for Summary Judgment on Emanuel's Negligence Per Se ("Defendant's SJ Motion on Negligence Per Se"), Docket Entry No. 96.

[29]     Plaintiffs' Response to Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 150, pp. 7-8 (characterizing Defendant's motion as taking the position that "a violation of any country's traffic law at any given location at any given point in time[] can be automatically applied as if it occurred in Texas, thus trigger[ing] Texas negligence per se concepts").

[30]     See Defendant's Reply to Plaintiffs' Response to Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 159, p. 2.

under the Texas Transportation Code.  <u>See</u> Tex. Transp. Code Ann. §
545.351(a) (making it illegal for the driver of a motor vehicle to
operate his vehicle "at a speed greater than is reasonable and
prudent under the circumstances then existing"); <u>see also</u> Tex.
Transp. Code Ann. § 545.352(a)-(b) (stating that operating a motor
vehicle in excess of the posted speed limit and/or statutory lawful
speeds is prima facie proof that the speed driven is unreasonable,
imprudent, and unlawful).  The court does not see and Plaintiffs
have provided no reason why Texas law should apply to Plaintiffs'
causes of action while Mexican law should apply to Defendant's
affirmative defense of negligence per se.  The court therefore
overrules Plaintiffs' argument against the application of a Texas
legal standard for the assessment of negligence per se.  Thus
Defendant will be permitted to raise an affirmative defense of
negligence per se applying Texas law to Plaintiffs' claims made
under Texas law.

"Negligence per se is a tort concept whereby a legislatively
imposed standard of conduct is adopted by the civil courts as
defining the conduct of a reasonably prudent person."  <u>Carter v.</u>
<u>William Sommerville & Son, Inc.</u>, 584 S.W.2d 274, 278 (Tex. 1979).
Generally, the party alleging negligence per se as a ground of
recovery assumes the burden of proving a statutory violation.
<u>Moughon v. Wolf</u>, 576 S.W.2d 603, 604 (Tex. 1978).  However, "a
finding of negligence per se only subjects the [party] to possible

16

liability, it does not establish liability." <u>Missouri Pac. R.R.</u>
<u>Co. v. Am. Statesman</u>, 552 S.W.2d 99, 102 (Tex. 1977).

To prevail on summary judgment, Defendant must provide
evidence that the alleged tortfeasor, Emanuel, actually violated
the statute in question, the speed limit on the stretch of El
Camino national road where the accident happened, and that the
violation proximately caused the accident to occur. <u>See</u> <u>id.</u> If
Defendant meets this burden, then the burden shifts to Emanuel to
present some evidence of a permissible excuse for his statutory
violation. <u>See</u> <u>L.M.B. Corp. v. Gurecky</u>, 501 S.W.2d 300 (Tex.
1973).

Defendant provides strong evidence that Emanuel was speeding,
although there remains some question of by how much. The speed
limit on the stretch of road upon which the accident occurred was
eighty kilometers per hour, or about forty-eight miles per hour.[31]
Defendant's accident reconstruction expert Dr. Juan Herrera
("Herrera") calculated that Emanuel was traveling between sixty-
eight and seventy-one miles per hour when he first left the

---

[31]    Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex.
E, Affidavit of Ismael Camberos Hernandez ("Hernandez"), ¶ 6. Hernandez's
affidavit is in Spanish.  In lieu of a party-provided translation of the
document, the court has made its own translation.  If the parties take issue with
any part of the court's translation throughout this memorandum, they must make
their objections known within the period made available for objections to this
memorandum and recommendation.
        Plaintiffs do not concede that the speed limit where the accident occurred
was eighty kilometers per hour, but they do not offer any competent summary
judgment evidence contradicting this number.  <u>See</u> Plaintiffs' Response to
Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 150, pp. 2 n.1, 8.

roadway.[32]   Emanuel was cited for speeding by Mexican Federal
Highway Patrol officers at the accident scene, although the report
does not give a miles-per-hour or kilometers-per-hour estimate.[33]
Mexican Federal Highway Patrol Officer Ismael Hernandez
("Hernandez"), an investigator of the subject accident, swears in
his affidavit that he estimated Emanuel to be driving at a speed of
around 120 kilometers per hour, or about seventy-five miles per
hour.[34]

On the other hand, Plaintiffs, while attacking the weight and
admissibility of Defendant's evidence, provide no summary judgment

---

[32]   Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex.
A, Affidavit of Herrera, ¶ 7(d).  Plaintiffs strenuously object to Defendant's
use of Herrera to establish Emanuel's speed, arguing: (1) that having an expert
state an opinion does not establish the opinion as undisputed fact simply because
there is no expert testimony contradicting him; (2) that Defendant failed to make
a showing that Herrera is qualified and that his methodology is sound and
otherwise meets expert opinion admissibility standards; and (3) that Defendant
failed to lay a proper foundation for Herrera's expert opinion.  Plaintiffs'
Response to Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 150, pp.
2-6.  Plaintiffs have not, at the time of Defendant's summary judgment motion on
Emanuel's negligence per se or since, filed any motion requesting the court to
strike Herrera or any part of his expert opinion or testimony.  Plaintiffs' other
arguments go to the admissibility and weight of the evidence, neither of which
is at issue for the purposes of this motion.   See Honore, 833 F.2d at 567
(stating that the court should not "weigh evidence, assess credibility, or
determine the most reasonable inference to be drawn from the evidence").

[33]   Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex.
B, Original Spanish Accident Report, pp. 2, 6; Ex. C, English-Translation of
Original Spanish Accident Report, pp. 2, 6.

[34]   Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex.
E, Affidavit of Hernandez, ¶ 7.  Plaintiffs object to the use of the police
report and police testimony because, accordingly to Plaintiffs, Defendant has not
shown that the police report writer or Hernandez were qualified to offer expert
opinion testimony at trial.  Plaintiffs' Response to Defendant's SJ Motion on
Negligence Per Se, Docket Entry No. 150, pp. 4-6.  As the court has already
stated with regard to Herrera's affidavit, Plaintiffs have not, at the time of
Defendant's summary judgment motion on Emanuel's negligence per se or since,
filed any motion requesting the court to strike Hernandez, any part of his expert
opinion or testimony, or the police report.  Plaintiffs' arguments here go to the
admissibility and weight of the evidence, neither of which is at issue for the
purposes of this motion.   See Honore, 833 F.2d at 567 (stating that the court
should not "weigh evidence, assess credibility, or determine the most reasonable
inference to be drawn from the evidence").

evidence directly contradicting Defendant's assertion that Emanuel was speeding at the time of the accident.[35]   However, Emanuel testified that he was traveling more than forty miles per hour at the time of the accident, but he could not say that he was traveling more than fifty miles per hour.[36]   Therefore, the evidence before the court suggests that at the time of the accident Emanuel was traveling at a speed somewhere between forty and seventy-five miles per hour.[37]   Because the uncontradicted speed limit on the stretch of road where the accident occurred was about forty-eight miles per hour,[38] well within the range of speed at which Emanuel may have been traveling, this court cannot find as a matter of law that Emanuel was speeding.   Thus whether Emanuel was speeding remains a fact issue for the jury.   Therefore, the court finds that Defendant has not met its burden on the first element of the test for negligence per se.

Accordingly, the court **RECOMMENDS** that Defendant's motion for summary judgment on Emanuel's negligence per se be **DENIED**.

**D.   Affirmative Defenses**

Plaintiffs move for summary judgment on three of Defendant's

---

[35]     See Plaintiff's Response to Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 150, pp. 2-8.

[36]     Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex. F, Deposition of Emanuel, pp. 78-79.

[37]     Id. at Ex. E, Affidavit of Hernandez, ¶ 7; Ex. F, Deposition of Emanuel, pp. 78-79.

[38]     Id. at Ex. E, Affidavit of Hernandez, ¶ 6.

19

affirmative defenses: (1) section 82.008 of the Texas Civil
Practice and Remedies Code ("Section 82.008"); (2) federal
preemption; and (3) seat belt defense/failure to mitigate.[39]

### 1.   Section 82.008

Defendant contends that it is entitled to a presumption that
the Subject Tire did not have a design defect because it complied
with standards promulgated by the National Highway Transportation
Safety Administration (NHTSA), which conducts safety tests and
promulgates federal safety regulations "for improving highway
safety in the operation and performance of motor vehicles and
equipment." 49 C.F.R. § 1.4(f)(2).   Defendant relies on Section
82.008, which states that a defendant in a products liability suit
is entitled to a rebuttable presumption of no design defect when it
shows it has complied with federal safety standards, in this case
those promulgated by NHTSA.   Tex. Civ. Prac. & Rem. Code Ann. §
82.008(a).   The statute provides:

> In a products liability action brought against a product
> manufacturer . . . there is a rebuttable presumption that
> the product manufacturer . . . is not liable for any
> injury to a claimant caused by some aspect of the . . .
> design of a product if the product manufacturer . . .
> establishes that the product's . . . design complied with
> mandatory safety standards or regulations adopted and
> promulgated by the federal government, or an agency of
> the federal government, that were applicable to the
> product at the time of manufacture and that governed the

---

[39]     Plaintiffs' Fed.R.Civ.P. 56 Motion for Partial Summary Judgment on
Specific Affirmative Defenses Plead by Defendant, Docket Entry No. 97, p. 2;
Plaintiffs' Brief and Memorandum of Law in Support of Fed.R.Civ.P. 56 Motion for
Partial Summary Judgment on Specific Affirmative Defenses Plead by Defendant
("Plaintiffs' SJ Motion on Affirmative Defenses"), Docket Entry No. 98, pp. 2-11.

product risk that allegedly caused harm.[40]

Id. In other words, to survive on summary judgment, Defendant must provide evidence of three requirements: (1) the product's design complied with mandatory federal safety standards; (2) those standards were applicable to the product at the time of manufacture; and (3) the standards governed the product risk that allegedly caused harm.    Id.    The court addresses the second requirement first.

### a.    Applicability of FMVSS 109

Defendant claims it complied with the relevant safety standard governing the risk at issue: Federal Motor Vehicle Safety Standard No. 109, "New Pneumatic and Certain Specialty Tires" ("FMVSS 109").[41]  49 C.F.R. § 571.109.  Plaintiffs argue that FMVSS 109 is

---

[40]    The statute also provides that: The claimant may rebut the presumption in Subsection (a) by establishing that: 1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 82.008(b).

[41]    FMVSS 109 provides standards regarding passenger car tires, providing:

    S1.  Scope.  This standard specifies tire dimensions and laboratory test requirements for bead unseating resistance, strength, endurance, and high speed performance; defines tire load ratings; and specifies labeling requirements for passenger car tires.

    S2.  Application.  This standard applies to new pneumatic radial tires for use on passenger cars manufactured before 1975, new pneumatic bias ply tires, T-type spare tires, ST, FI, and 8-12 rim diameter and below tires for use on passenger cars manufactured after 1948.  However, it does not apply to any tire that has been so altered so as to render impossible its use, or its repair for use, as motor vehicle equipment.

    S3.  Definitions . . . .

    S4.  Requirements . . . .

    S5.  Test Procedures . . . .

21

irrelevant in this case because it is not a design standard, and thus does not apply at all to the design defects it alleges in this case, such as the lack of a belt wedge, the inadequate belt skim compound, and the lack of a nylon cap ply.[42] Plaintiffs argue that "at the time the [Subject Tire] was built, there were no federal or state safety standards governing how to design or manufacture a tire."

The purpose of the federal motor vehicle safety standards is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. To be brought within the ambit of Section 82.008, the manufacturer must establish, in part, that the product's design complied with mandatory federal safety standards that were applicable to the product at the time of manufacture. Tex. Civ. Prac. & Rem. Code Ann. § 82.008(a).

Plaintiffs are correct that FMVSS 109 does not direct precisely how a tire must be designed. However, the statute does mandate design criteria because the statute sets the minimum levels of various types of stress the finished product must be capable of withstanding. 49 C.F.R. § 571.109(S4). In part, FMVSS 109 covers

---

S6. Nonconforming tires. No tire that is designed for use on passenger cars and manufactured on or after October 1, 1972, but does not conform to all the requirements of this standard, shall be sold, offered for sale, introduced or delivered for introduction into interstate commerce, or imported into the United States, for any purpose.

49 C.F.R. § 571.109.

[42] Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 97, p. 5.

bead unseating resistance, tire strength, tire endurance, and tire high speed performance.  49 C.F.R. § 571.109(S1).  A tire must withstand the required stress parameters to ensure that it will not fail while in normal use.  Standards such as these thereby explicitly inform the designers of baseline criteria that must be met to prevent product failure and, in turn, that support product safety.

Plaintiffs argue that no test required by FMVSS 109 can determine how resistant a tire is to belt/belt detachments or the late life durability of any tire, and thus FMVSS 109 is inapplicable.  That is simply not the requirement of the statute.  The statute requires that the product's design comply with mandatory federal safety standards that are applicable to the product at the time of manufacture.  Tex. Civ. Prac. & Rem. Code Ann. § 82.008(a).  Here, FMVSS 109 is a mandatory federal safety standard that was applicable to Defendant's product at the time it was manufactured, because all tires must be capable of passing its tests to be sold in the United States.  See 49 C.F.R. § 571.109(S6) ("No tire that is designed for use on passenger cars and manufactured on or after October 1, 1972, but does not conform to all the requirements of this standard, shall be sold, offered for sale, introduced or delivered for introduction into interstate

commerce, or imported into the United States, for any purpose.")[43]

Accordingly, the court finds as a matter of law that FMVSS 109 was applicable to the Subject Tire, and the court finds Plaintiff's argument to the contrary to be without merit.

### b.  Compliance

Defendant claims it complied with all of the requirements of FMVSS 109 and thus meets the second prong of its Section 82.008 defense.  See 49 C.F.R. § 571.109.  In support of its assertion, Defendant has submitted to the court an affidavit by Lyle Campbell ("Campbell"), a forensic and technical consultant who has been employed by Defendant since 1967.[44]  Campbell testified that Defendant:

> requires its tires not only meet but exceed the mandatory federal requirements. [Defendant's] internal standards, both in 2003 and today, are even more stringent than the federal standards mandated by NHTSA. Each of [Defendant's] tire designs . . . is tested to not only ensure that it meets all applicable federal standards, but also [Defendant's] own standards, which exceed the federal standards.[45]

Campbell's affidavit discusses the various requirements of FMVSS 109 and states that Defendant meets or exceeds all of the requirements on its tires.[46]

---

[43]  See also Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, Ex. A, Affidavit of Campbell, ¶ 14.

[44]  Id. ¶ 1-3.

[45]  Id. ¶ 8.

[46]  Id. ¶ 9-13.

In their motion for summary judgment, Plaintiffs argue that the evidence of Defendant's compliance with FMVSS 109 is not competent because it is "an unverifiable and entirely self-serving corporate claim."[47]  Although Plaintiffs attack the credibility of Campbell's testimony, their arguments run to the weight of the evidence, and the court cannot make such determinations on summary judgment.  See Honore, 833 F.2d at 567 (stating that a court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence" in deciding a motion for summary judgment).

Accordingly, the court finds that Defendant, the non-movant, has met its summary judgment burden on whether it has complied with the second prong of Section 82.008, and the court overrules this argument within Plaintiffs' summary judgment motion.

### c.  Product Risk

The court has determined that FMVSS 109 is applicable to Defendant's product and that Defendant has produced evidence of compliance with that standard.  Finally, to come within the ambit of Section 82.008, Defendant must overcome one other statutory hurdle.  Defendant must show that the mandatory federal safety standards with which its design complied governed the actual product risk that allegedly caused the harm.  See Tex. Civ. Prac.

---

[47]   Plaintiffs' Reply in Support of Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 153, p. 2.

& Rem. Code Ann. § 82.008(a).

Plaintiffs argue that, even were the evidence competent, FMVSS 109 does not "govern the product risk that allegedly caused harm."[48] They argue that the product risk that caused harm in this case is late life tread separation, also known as tread/belt or belt/belt separation or detachment.[49]  They state that the applicability of FMVSS 109 to this risk is necessarily confined by its scope and application to bias tires, which "have not been made for general consumer use since the invention of the steel belted radial tire decades ago," which means that the statute does not govern the product risk asserted in this case.[50]

The court disagrees with Plaintiffs' characterization of 49 C.F.R. § 571.109.  This statute, in part, covers the risk of tire failure when exposed to a variety of stressful conditions.  See 49 C.F.R. § 571.109(S4)-(S5).  The question is not whether the particular defect claimed was governed by a federal safety standard, but rather whether the particular risk arising from the alleged defect was governed by the federal safety standard.  See Wright v. Ford Motor Co., 508 F.3d 263, 270 (5th Cir. 2007).  Here, in other words, the question is not whether the design of the

---

[48]    Plaintiffs' Reply in Support of Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 153, p. 5.

[49]    Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 97, p. 6.

[50]    Id. at Ex. 1, Affidavit of Cottles, ¶ 29.

26

steel-belted radial tire was governed by FMVSS 109, but rather whether the risk of tire failure arising from that design was governed by the standards of FMVSS 109.  FMVSS 109 clearly presents minimum standards which Defendant's tires must meet before those tires may be permitted to fail without legal repercussion.  See 49 C.F.R. § 571.109(S1).  Therefore, FMVSS 109 governs the product risk that caused the harm in this case.

Accordingly, the court finds that Defendant has met its summary judgment burden on the third prong of its Section 82.008 defense, and the court overrules Plaintiffs' argument to the contrary.

Having exhausted all of Plaintiffs' arguments, the court therefore **RECOMMENDS** that Plaintiffs' motion for summary judgment on Defendant's affirmative defense under Section 82.008(a) be **DENIED**.[51]

## 2.  Federal Preemption

Defendant's answer raises an affirmative defense that "Plaintiffs' claims are barred and/or preempted, in whole or part, by the federal legislation and regulations governing tires,

---

[51]    The court wishes to emphasize two points with regard to this ruling. First, the court has not expressed an opinion on either the strength or the admissibility of Plaintiffs' evidence rebutting the presumption in Defendant's favor.  See Tex. Civ. Prac. & Rem. Code Ann. § 82.008(b) (providing that: "The claimant may rebut the presumption in Subsection (a) by establishing that: 1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage . . . .").  Second, this ruling is not intended to infringe upon the right of the trial court to rule in any manner it deems proper on Plaintiffs' pending motion in limine with regard to the FMVSS standards.  See Plaintiffs' Opposed Motion In Limine re FMVSS Standards, Docket Entry No. 103.

including the Motor Vehicle Safety Act and the regulations promulgated by the [NHTSA]."[52] Plaintiffs move for summary judgment on this affirmative defense.

The United States Supreme Court has directly addressed the issue of federal preemption of state tort claims under NHTSA. See Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861 (2000). In Geier, the Court was asked to decide whether NHTSA pre-empted a state common-law tort action in which the plaintiff claimed that the defendant auto manufacturer, who was in compliance with the applicable FMVSS, was negligent in failing to equip its automobiles with driver's side airbags. Id. at 864. The Court analyzed the issue in three steps, determining: (1) whether NHTSA's express pre-emption provision pre-empted the lawsuit; (2) whether ordinary pre-emption principles applied to the matter; and (3) whether the lawsuit actually conflicted with the applicable FMVSS. Id. at 867.

The Court first held that the saving clause of NHTSA removes common-law tort actions from the scope of NHTSA's express pre-emption clause, thus concluding that there is no automatic preemption for compliance with NHTSA standards. Id. at 868. Next, the Court held that the saving clause did not foreclose or limit the operation of ordinary preemption principles. Id. at 869-74. The Court stated that the provisions merely barred a defense that compliance with a federal standard automatically exempted a

---

[52]     Defendant's Original Answer, Docket Entry No. 4, ¶ 66.

defendant from state law, because the saving provision preserved actions that sought to establish greater safety standards of care than the minimum safety standards set by federal regulation. Id.

Defendant concedes that "the federal regulations related to automobiles and their components contain[] a savings clause that permits common law actions."[53]  However, most of Defendant's response to Plaintiffs' motion is unfocused and discusses presumption and admissibility more than it does preemption.  In fact, the court is unable to find any cogent argument by Defendant that ordinary preemption applies.  As such, the court concludes that Defendant has abandoned any argument on this point.

Much of the dispute between Plaintiffs and Defendant is, in reality, strongly dependent upon the court's reading of Section 82.008, and, as the court has already addressed that statute, the arguments can thus be quickly resolved.  Defendant avers that it was in compliance with the federal standards of FMVSS 109.  The court has already found that Defendant has presented evidence supporting this assertion.[54]  Defendant then posits that compliance with those standards may bar Plaintiffs' claims in whole or in part under Section 82.008.  However, Section 82.008(a) is not limited to preemptive regulations and appears, rather, to assume non-

---

[53]   Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, p. 6.

[54]   See supra § D.1.b.; see also Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, Ex. A, Affidavit of Campbell.

preemptive regulations, because "compliance with a preemptive regulation would of itself normally be determinative regardless of whether the claimant established under [S]ection 82.008(b)(1) that it was 'inadequate to protect the public'". <u>Wright</u>, 508 F.3d at 271; <u>see also</u> 49 U.S.C. § 301.03(e) (compliance with federal motor vehicle safety standards under 49 U.S.C. § 301.01 "does not exempt a person from liability at common law").  Therefore, under neither state nor federal law are Plaintiffs' claims preempted.[55]

Defendant also argues that Texas law may preclude some of Plaintiffs' claims, particularly those related to punitive damages. Because the only argument made here is whether a claim for punitive

---

[55]     Defendant cites to <u>BIC Pen Corporation v. Carter</u> in support of its argument that compliance with minimum federal safety standards equals preemption. 251 S.W.3d 500, 507 (Tex. 2008).  However, the Texas Supreme Court specifically distinguished the United States Supreme Court's interpretation of the NHTSA standards in <u>Geier</u> from those standards created under the Consumer Product Safety Act by the Consumer Product Safety Commission ("Commission") which were at issue in <u>BIC Pen</u>.  <u>Id.</u> at 503, 505-06.  The Texas Supreme Court concluded, in part, that:

> [O]ne of the Commission's primary concerns was the selection of a standard that encouraged the manufacture of child-resistant lighters and their acceptance by adult users.   Interpreting federal regulation in this area as a liability floor that may be enhanced by state law, however, undercuts the federal regulations and the Commission's conclusion that the eighty-five percent test "strikes a reasonable balance between improved safety for a substantial majority of young children and other potential fire victims and the potential for adverse competitive effects and manufacturing disruption."   The Commission specifically rejected more stringent standards, noting the problems that such standards would created by reducing the utility and convenience of the product and increasing costs disproportionate to benefits.  Because the Commission weighed these competing concerns when drafting its standard, we conclude that imposing a common law rule that would impose liability above the federal standard is contrary to the Commission's plan and conflicts with federal law.

<u>Id.</u> at 507 (internal citations omitted).  In light of the United States Supreme Court's ruling in <u>Geier</u> and because the parties have not otherwise presented evidence that the adverse and beneficial effects of FMVSS 109 were weighed and that more stringent standards were specifically rejected, the court finds that the reasoning of <u>BIC Pen</u> is inapplicable to the present case.

damages is precluded, the court will address this defense in the next section of this opinion.

Based on Defendant's response to Plaintiffs' motion, it appears that Defendant's main concern is that the court may not allow evidence of its compliance with the federal standards to be presented to the jury.  However, an affirmative defense of federal preemption is not the proper vehicle by which to address this concern.[56]

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for partial summary judgment on the affirmative defense of federal preemption be **GRANTED**.

### 3.    Seat Belt Defense

Defendant has alleged that neither Jose nor Martin were wearing seatbelts at the time of the accident.  The court is asked to rule on several issues: (1) whether, under Texas law, seat belt usage is admissible at trial; (2) whether the evidence shows as a matter of law that Martin and his son Jose were unbelted at the time of the accident; (3) whether there was a failure to mitigate by Martin and Jose; and (4) whether Martin and Jose were contributorily negligence.

### a.    Admissibility of Seatbelt Use

The parties argue intensely over section 545.413(g) of the

---

[56]    To be clear, the court's ruling on preemption does not mean that Defendant is precluded from trying to admit evidence of its compliance with the federal standards.  The two issues are distinct.

Texas Transportation Code ("Section 545.423(g)"), which, until its repeal in 2003, provided: "Use or nonuse of a safety belt is not admissible evidence in a civil trial . . . ."  Tex. Transp. Code Ann. § 545.413(g) (repealed 2003).  Prior to its enactment, Texas courts similarly forbade the admission in civil trials of whether seatbelts were in use, for purposes of proving that damages were heightened due to the omission of an accident victim from wearing his seatbelt.  See, e.g., Carnation Co. v. Wong, 516 S.W.2d 116 (Tex. 1974).

Statutory construction is a question of law.  State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006).  Although no opinion that this court has found or to which the parties have directed its attention has discussed the issue of seatbelt usage since the repeal of Section 545.413(g),[57] the court is bound to assume that every action of statutory construction taken by the legislature is of significance.  See generally T.C.R. v. Bell County Dist. Attorney's Office, ____ S.W.3d ____, No. 03-08-00627-CV, 2009 WL 3319922, at *6 (Tex. App.—Austin Aug. 6, 2009, no pet. h.).  The court's primary objective in statutory construction is to give effect to the legislature's intent.  Shumake, 199 S.W.3d at 284.  The court must read every word, phrase, and expression in a statute

---

[57]    The Fifth Circuit recently thoroughly discussed the admission of seatbelt usage, but the case in which it discussed this issue was filed prior to the repeal of section 545.413(g), and therefore section 545.413(g) applied and determined the outcome of that appeal.  Hodges v. Indiana Mills & Mfg. Inc., 474 F.3d 188, 197-202 (5th Cir. 2006).

as if it were deliberately chosen, and likewise presume that words excluded from the statute are done so purposely. See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). Furthermore, the court's analysis of a statutory text is also informed by considerations of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "consequences of a particular construction." Tex. Gov't Code Ann. § 311.023(1), (2), (3), (5).

Here, it is crucial to remember that the Texas legislature enacted a law that required courts to disregard seatbelt use in civil trials but then chose to repeal that provision. The court must presume that words excluded from the statute are done so purposefully, and all the more so when the words are enacted and then explicitly repealed. See Gables Realty, 81 S.W.3d at 873. Because the legislature chose not to replace the provision with any other provision, it must be presumed that the legislature no longer wished to dictate to the courts that evidence of seatbelt use must be excluded. Therefore, the legislature has now left it to the courts to decide on a case by case basis whether seatbelt use should be admissible at trial.

Because statutory law no longer proscribes the admissibility of seat belt usage, Plaintiffs urge the court to examine old case law, i.e. decisions rendered prior to the enactment of Section

33

545.413(g), and make its decision accordingly.  In 1974, the Texas Supreme Court held that failure to wear a seatbelt was not admissible in civil cases to prove enhanced injury or comparative fault.  <u>Carnation Co.</u>, 516 S.W.2d.  In 1985, Texas for the first time made it a traffic violation to fail to wear a seatbelt in a front seat position; while at the same time enacting section 545.413(g) regarding the inadmissibility of seatbelt usage in civil trials.  <u>See</u> Tex. Transp. Code Ann. § 545.413(a).  Then, in 2003, Section 545.413(g) was repealed, although it remained a traffic violation to fail to wear seatbelts in a front seat position.  <u>Id.</u> No opinion that this court is aware of has since discussed the issue of what effect the repeal of section 545.413(g) had on existing case law.

The court here "must attempt to predict state law, not to create or modify it."  <u>Jackson v. Johns-Manville Sales Corp.</u>, 781 F.2d 394, 396-98 (5th Cir. 1986) (en banc).  Taking into account the legislative repeal of Section 545.413(g), and that there has been no final disposition of the issue that is directly on point, the court must make an "<u>Erie</u>-guess," predicting how the Texas Supreme Court would rule.  <u>Centennial Ins. Co. v. Ryder Truck Rental, Inc.</u>, 149 F.3d 378, 382 (5th Cir. 1998).  The Texas legislature has clearly evinced an intent to allow evidence of seat belt usage into civil trials by repealing the prohibition against admissibility of such evidence.  Therefore, the Texas legislature must have intended

34

the courts to admit seat belt uses in those cases in which it was deemed just and proper.

The court's interpretation is bolstered by the legislative history of House Bill 4, which became law in the Act of June 11, 2003. <u>See</u> Act of June 11, 2003, 78th Leg., R.S., ch.4. The intent behind repealing Section 545.413(g) is made clear there. According to the Bill Analysis submitted to House Members before they voted on it, the repeal of Section 545.413(g) meant that "The bill will allow evidence of the use or non-use of a seatbelt to be admissible to the same extent other acts of a plaintiff are admissible under the Texas Rules of Evidence." 78(R) HB 4 House Committee Report by Representative Nixon, p. 2.[58] This history jibes with this court's interpretation of current Texas law.

This interpretation of current Texas law is important because in <u>Hodges v. Indiana Mills & Mfg. Inc.</u>, the Fifth Circuit determined that Section 545.413(g) was substantive, rather than procedural because it fell under the Texas Transportation Code and was part of the same section mandating seatbelt use. 474 F.3d 188, 199 (5th Cir. 2006). The Fifth Circuit, accordingly, applied Texas law in interpreting the provision. <u>Id.</u> Now, Section 545.413(g) is no longer a part of the Texas Transportation Code. In addition, the legislative history explicitly states that the repeal of the

---

[58]    The   Bill   Analysis   may   be   viewed   online   at http://www.legis.state.tx.us/tlodocs/78R/analysis/pdf/HB00004H.pdf.

provision was intended to make admissibility of seatbelt usage dependent upon the Texas Rules of Evidence. 78(R) HB 4 House Committee Report by Representative Nixon, p. 2. In other words, the legislative intent was to change the admissibility of seatbelt usage from a substantive to a procedural issue. Under the <u>Erie</u> doctrine, a federal court sitting in diversity must apply state substantive law and federal procedural law. <u>Foradori v. Harris</u>, 523 F.3d 477, 486 (5th Cir. 2008) (citing <u>Gasperini v. Ctr. For Humanities, Inc.</u>, 518 U.S. 415, 426-27 (1996)). Here, therefore, federal procedural law governs the admissibility of seat belt usage at trial.

The court emphasizes that it has <u>not</u> decided whether the use of seatbelts <u>will be</u> admissible, but only that Texas law does not preclude the admissibility of such evidence. The admissibility of seatbelt usage will be decided by the trial court according to the Federal Rules of Evidence.[59]

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for summary judgment on this ground, that Texas law precludes the admissibility of seatbelt usage in the present law suit, be **DENIED**.

### b.   Evidence of Seatbelt Non-use

Before addressing Defendant's affirmative defenses, the court examines the summary judgment evidence with respect to whether

---

[59] Plaintiffs also have a pending motion in limine to exclude discussion and evidence of seatbelt usage from the trial. <u>See</u> Plaintiffs' Motion in Limine to Exclude Evidence of Alleged Non-use of Seatbelts by Decedents, Docket Entry No. 102.

either Martin or Jose were wearing seatbelts at the time of the accident.  In response to Plaintiffs' motion, Defendant has only provided evidence that Jose was unbelted; Maria stated in her deposition that, just before the accident, Jose was in the third row of the van's seats without a seatbelt on.[60]

However, Defendant provides no evidence whatsoever that Martin was unbelted.[61]  In the deposition excerpt provided to the court, Maria was asked where Martin was sitting but not whether he was wearing a seatbelt.[62]  The court must grant summary judgment if Defendant, the nonmovant, fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[60]    Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, Ex. B, Deposition of Maria, p. 83.  In Plaintiffs' motion in limine on this issue, they mention that the back seat of the van, where Jose was lying, did not have seat belts installed, but the parties have neither mentioned that fact in their briefs regarding the motions for summary judgment nor, as far as the court can determine, presented that evidence in any competent summary judgment format.  Plaintiffs' Motion in Limine to Exclude Evidence of Alleged Non-use of Seatbelts by Decedents, Docket Entry No. 102, pp. 2, 6.

[61]    From the summary judgment evidence before the court, it is clear that Emanuel was belted and remained so until the van stopped rolling.  Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex. F, Deposition of Emanuel, p. 60.  It is equally clear that Martin was ejected from the van, although it is unclear whether he was belted when the accident occurred. Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex. F, Deposition of Emanuel, pp. 62-63.  It is stated that Jose was also ejected from the vehicle, although the parties have not directed the court to summary judgment evidence confirming this assertion.  See, e.g., Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry no. 152, p. 12.  The parties intimate, although do not explicitly say, that Jessica and Maria were not ejected from the vehicle, and there is no evidence before the court stating whether either or both were belted at the time of the accident.  See, e.g., Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, p. 12.

[62]    Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, Ex. B, Deposition of Maria, p. 84.

trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  The court finds that Defendant has not provided competent summary judgment evidence that is sufficient to show that Martin was not wearing a seatbelt.  The court therefore need not examine Defendant's affirmative defenses of mitigation of damages and contributory negligence with regard to Martin and accordingly **RECOMMENDS** that Plaintiffs' motion for summary judgment on these two defenses be **GRANTED** as to Martin.

### c.  Mitigation of Damages - Jose

Before addressing the substantive affirmative defenses, the court must disentangle the issues of contributory negligence and mitigation of damages.  These two concepts are distinct.  In determining which doctrine applies to a given claim or defense, the court must consider whether the alleged negligence "merely increases or adds to the extent of the loss or injury occasioned by another's negligence," in which case mitigation of damages is the appropriate legal tool. <u>Elbaor v. Smith</u>, 845 S.W.2d 240, 245 (Tex. 1992).  The mitigation of damages doctrine requires an injured party to "exercise reasonable care to minimize its damages if damages can be avoided with only slight expense and reasonable effort." <u>Cotten v. Weatherford Bancshares, Inc.</u>, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth 2006, pet. denied).  An injured person's failure:

> to care for and treat his injuries as a reasonable prudent person would under the same or similar circumstances [is] a branch of the doctrine of

> contributory negligence . . . only in the sense that
> damages resulting from such failure are ultimately not
> proximately caused by the wrongdoer's act or omissions,
> but by the injured person's own subsequent negligence,
> and are thus not recoverable from the wrongdoer.

Moulton v. Alamo Ambulance Serv., Inc., 414 S.W.2d 444, 449 (Tex. 1967) (citations and internal quotation omitted).

For example, when a plaintiff failing to follow competent medical advice thereby aggravates injuries sustained in a collision, there is an issue of failure to mitigate damages as opposed to one of contributory negligence. Id. at 448-49. "Contributory negligence goes to the proximate cause of the original incident." Hygeia Dairy Co. v. Gonzalez, 994 S.W.2d 220, 226 (Tex. App.—San Antonio 1999, no pet.). "Mitigation of damages, on the other hand, arises from [the injured party's] separate duty to act reasonably in reducing his damages." Id. The party asserting the injured party's failure to mitigate has the burden of proving the failure to mitigate and must show the extent to which the damages were increased by the failure to mitigate. Young v. Thota, 271 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, pet. filed).

Here, there is no question of Jose's "subsequent negligence" in this case. See Moulton, 414 S.W.2d at 449. Jose died at the scene of the crash as a result of his injuries,[63] and there are no allegations that anything he did subsequent to the accident

---

[63]     Defendant's SJ Motion on Negligence Per Se, Docket Entry No. 96, Ex. F, Deposition of Emanuel, p. 62.

39

increased his damages.  Therefore, there is no evidence of his having failed to mitigate his damages.

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for partial summary judgment on the affirmative defense of failure to mitigate be **GRANTED**.

### d.  Contributory Negligence - Jose

Next, the court examines Defendant's affirmative defense of contributory negligence.  "Contributory negligence must have a "causal connection with the accident that but for the conduct the accident would not have happened," as opposed to negligence (i.e. lack of mitigation) that "merely increases or adds to the extent of the loss or injury occasioned by another's negligence," which is not "such contributory negligence as will defeat recovery." Solomon v. T & M Contractors, Inc., No. 2-09-013-CV, 2009 WL 5183788, at *2 (Tex. App.—Fort Worth Dec. 31, 2009, no pet. h.) (citing Kerby v. Abilene Christian College, 503 S.W.2d 526, 528 (Tex. 1974)).  Here, the parties argue two different levels of causation.  Plaintiffs argue that Jose's failure to wear a seatbelt in no way contributed to the tire failure that caused the accident. On the other hand, Defendant argues that Jose's failure to wear a seatbelt contributed to his ejection from the vehicle during the accident.[64]

---

[64]  Defendant has not presented a negligence per se argument with regard to the decedents' alleged failure to use seatbelts.  As such, the issue of whether Mexican law requires seatbelt usage on the highway where the accident occurred is irrelevant except, perhaps, in determining what a reasonable and

The court finds the reasoning in <u>Torres v. State</u> to be persuasive. 2000 WL 34251147, at *5 (Tex. App.—Corpus Christi 2000, no pet.) (unpublished). There, the defendant in a DUI manslaughter case argued that evidence of her passenger's not wearing a seatbelt should have gone to the jury as part of her defense that the passenger's death was not caused by her failure to maintain control of the vehicle but rather by the passenger's failure to wear a seatbelt. <u>Id.</u> In rejecting this argument, the <u>Torres</u> court stated:

> [T]o undermine the causation element, it would have to be the case that [the decedent's] failure to wear a seatbelt was sufficient to cause her death. However, [the decedent's] failure to wear a seatbelt, alone, was not sufficient to cause her death; this death would not have occurred but for [the driver's] conduct [in crashing her vehicle].

<u>Id.</u>

The material circumstances and reasoning of <u>Torres</u> are equally applicable to the present case. The alleged failure to wear a seatbelt did not cause Jose's death. The failure of the tire and accompanying loss of vehicle control is what caused his death. Stated otherwise, wearing a seatbelt may have prevented Jose's death, but failure to wear a seatbelt did not cause it.[65]

---

prudent person would have been doing under the same circumstances. Here, however, the parties have presented no evidence whether seatbelt usage was a legal requirement on the stretch of El Camino national road where the accident occurred.

[65]    Similarly, if a person fails to lock their car and the car is stolen, the failure to lock does not cause the car to be stolen, although doing so may have prevented the theft.

Accordingly, the court **RECOMMENDS** that Plaintiffs' motion for partial summary judgment on the affirmative defense of contributory negligence be **GRANTED**.

Accordingly, in sum, the court **RECOMMENDS** that Plaintiffs' motion for partial summary judgment on Defendant's affirmative defenses be **GRANTED IN PART, DENIED IN PART**.

## E.   Punitive Damages

Defendant moves for summary judgment on the issue of punitive damages.   Defendant makes two arguments in favor of dismissal of this claim.   First, Defendant avers that Plaintiffs have no evidence to demonstrate that a material question of fact exists to show that Defendant acted with the requisite fraud, malice, or gross negligence.   Second, Defendant avers that its compliance with the applicable federal safety guidelines bars Plaintiffs' claim for punitive damages.   The court addresses the second argument first.

### 1.   Compliance with Federal Safety Guidelines

The court has already determined that Defendant has presented evidence sufficient to survive summary judgment that it has complied with the applicable federal standard, i.e. FMVSS 109.[66] Plaintiffs have presented no summary judgment evidence rebutting this assertion,[67] but the question remains whether that compliance

---

[66]     See supra § D.1.b.

[67]     Plaintiffs make three arguments against the competence of the evidence offered by Defendant in support of its FMVSS compliance, i.e. Campbell's affidavit.   Plaintiffs' Reply to Defendant's Response to Plaintiffs' SJ Motion

bars Plaintiffs' claim for punitive damages.

Defendant argues that it relied on national safety standards and therefore it could not have acted in flagrant disregard of the rights and safety of its customers and in spite of actual awareness of probably injury.  It relies primarily on <u>Miles v. Ford Motor Co.</u> to support its assertion.  922 S.W.2d 572 (Tex. App.—Texarkana 1996), <u>rev'd on other grounds</u>, 967 S.W.2d 377 (Tex. 1998). However, in that case, the court expressly declined to decide whether compliance with a statutory standard bars liability for punitive damages:

> The general rule is that compliance with regulatory standards does not necessarily absolve a manufacturer from ordinary liability for product defects or negligence.  But most commentators suggest that compliance with a statutory standard should bar liability for punitive damages.  We do not decide that question here.  We only find that [the defendant's] reliance on regulatory agencies' studies, coupled with the other evidence showing that it made a careful study and decision on the safety of its restraint system, makes the jury findings of gross negligence and malice unsupported by factually sufficient evidence.

<u>Id.</u> at 590 n.7 (internal citations omitted).

----

on Affirmative Defenses, Docket Entry No. 153, p. 2; <u>see</u> Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 152, Ex. A, Affidavit of Campbell.  First, Plaintiffs declare that Campbell had no personal knowledge of the testing done on the Subject Tire's design, and that any testing that was performed by Defendant was not approved or overseen by anyone outside of Defendant.  Plaintiffs' Reply to Defendant's Response to Plaintiffs' SJ Motion on Affirmative Defenses, Docket Entry No. 153, p. 2.  Second, Plaintiffs point to Defendant's admission that the Subject Tire itself was never tested for FMVSS compliance.  <u>Id.</u>  Third, Plaintiffs aver that some tires of the same design tested on a sampling basis may have failed the same FMVSS tests with which the Subject Tire allegedly would have complied.  <u>Id.</u>  The standards to not mandate that every tire be tested; the required testing is destructive and therefore does not allow for sale of items that were subjected to testing.  <u>See</u> 49 C.F.R. § 571.109.  Accordingly, Plaintiffs' arguments, if anything, may go to the weight of Defendant's evidence, but they do not amount to factually rebutting evidence that Defendant complied with FMVSS standards.

The United States Supreme Court has discussed, in dicta, the effect that compliance with FMVSS standards would have on the award of punitive damages.  See Geier, 529 U.S. at 893.  Justice Breyer stated for the Court:

> [E]ven though good-faith compliance with the minimum requirements of [FMVSS] 208 would not provide [the defendant] with a complete defense on the merits, I assume that such compliance would be admissible evidence tending to negate charges of negligent and defective design.  In addition, if [the defendant] were ultimately found liable, such compliance would presumably weigh against an award of punitive damages.  Silkwood v. Kerr-McGee Corp., 485 F. Supp. 566, 583-84 (W.D. Okla. 1979) (concluding that substantial compliance with regulatory scheme did not bar award of punitive damages, but noting that "[g]ood faith belief in, and efforts to comply with, all government regulations would be evidence of conduct inconsistent with the mental state requisite for punitive damages" under state law).

Id. at 892-93 (internal footnotes omitted).  In the present case, the court has found no relevant Fifth Circuit or Texas Supreme Court case barring punitive damages on the basis of compliance with federal safety standards.  Although such compliance may weigh against the award of such damages, it is not enough to bar the issue on summary judgment.

Accordingly, the court **RECOMMENDS** that Defendant's motion for summary judgment on this ground be **DENIED**.

## 2.  Material Issue of Fact

Defendant next contends that Plaintiffs have not provided sufficient evidence of fraud, malice, or gross negligence to

support an award of punitive damages.[68]  Plaintiffs agree that no allegations supporting claims of fraud or malice are present in this case, but they do claim that punitive damages are obtainable on the basis of gross negligence.[69]

Defendant has been subjected to a plethora of lawsuits relating to the failure of its tires.[70]  The court has examined several of these lawsuits wherein punitive damages were sought under similar factual circumstances and will proceed to discuss two of them.  In Phrapha-Phatana v. Cooper Tire & Rubber Co., the court granted summary judgment to Defendant after dividing the plaintiffs' seven arguments in favor of punitive damages into three categories, only the first two of which are relevant to the present motion: (1) manufacturing and design choices; (2) quality control; and (3) alleged discovery abuse.  No. 03-1089-PHX-ROS, 2006 WL 2683629, (D. Ariz. Sept. 19, 2006) (unpublished).  The court first discussed and rejected the plaintiffs' five arguments regarding manufacturing and design.[71]  Id. at *4.  The court concluded that

---

[68]    Defendant's SJ Motion on Punitive Damages, Docket Entry No. 175, pp. 4-5.

[69]    Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 175, pp. 6-8.

[70]    See, e.g., Plaintiffs' Response to Defendant's SJ Motions on Negligence and Strict Liability, Docket Entry No. 151, Ex. 3, List of Litigation Against Defendant; Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 176, p. 25.

[71]    The evidence and the court's assessment of it were as follows:

First, the parties agree that Defendant decreased the undertread thickness of certain tires and that decrease lead to a slight increase in the tread separation rate.  The increase, however, was

all of the alleged manufacturing and design problems stemmed from normal choices that a tire company must make, and though the problems could support the plaintiffs' product liability claim, the evidence was insufficient to support an award of punitive damages. Id. at *5.

On the issue of quality control, the plaintiffs based their request for punitive damages on the testimony of two of Defendant's employees:

> According to Mr. Eaton, Defendant sacrificed quality for quantity at its manufacturing facilities.  Mr. Eaton's opinions are based on his experiences in Defendant's facilities, including statements he heard other individuals make.  Mr. Eaton allegedly took his concerns to Defendant's management but no changes were made. Martin Mahan was also employed by Defendant and he allegedly heard "supervisors specifically tell workers to use 'bad materials.'"

Id.   The court concluded that Defendant's failure to address

---

a fraction of one percentage point.  Also, Plaintiffs' expert did not measure the undertread of the subject tire nor was he confident that the undertread of the tire was defective.  Second, Plaintiffs' evidence regarding an "inconsistent innerliner gauge" is flawed in that their expert has not measured the innerliner gauge of the subject tire and the evidence in support of their argument involves a manufacturing facility different from the facility where the subject tire was made.   Third, Plaintiffs have not produced any evidence establishing that the antidegradant package Defendant used was insufficient.  Plaintiffs' expert is not qualified to address this issue and the documents cited by Plaintiffs do not establish that the antidegradant package was insufficient.  Fourth, Plaintiffs support their argument regarding the necessity of a "belt edge gumstrip" by citing a document from Defendant recommending that "belt edge gumstrips" be incorporated into certain tire lines.  This recommendation, however, was for tire types different from the tire type at issue here.  Plaintiffs did not present any other evidence establishing that gumstrips were necessary and that Defendant consciously disregarded this necessity.  Fifth, Plaintiffs' argument regarding the necessity of a "nylon overlay" is not supported by their own expert's testimony.  In his deposition, Plaintiffs' expert stated that the absence of a nylon overlay is not necessarily a defect and that 90% of comparable tires do not have a nylon overlay.

Phrapha-Phatana, 2006 WL 2683629, at *4 (internal citations omitted).

Eaton's concerns, even when combined with the conversations overheard by Mahan, did not support an award of punitive damages, and no other adequate evidence was provided linking alleged problems of quality control with the tire that was at issue.  <u>Id.</u> Accordingly, after discussing the alleged discovery abuses, the court granted Defendant's motion for summary judgment on the issue of punitive damages.

On the other hand, in <u>Cooper Tire and Rubber Co. v. Tuckier</u>, the Mississippi Supreme Court upheld a jury's award of punitive damages against Defendant.  826 So.2d 679 (Miss. 2002).  There, Defendant made two arguments against the award that are relevant here: (1) the plaintiffs had not met their evidentiary burden of proof; and (2) the defective tire was the only one found to be defective out of the 66,000 tires produced by Defendant that year. <u>Id.</u> at 690.

The Mississippi Supreme Court dispatched the first argument by referencing the testimony of the plaintiffs' witnesses who had been employed for years by Defendant and who testified that they had personal knowledge that bad stock had been used in the manufacture of tires.[72]  <u>Id.</u>  The court then also rejected Defendant's second

---

[72]    The evidence and the court's assessment of it were as follows:

Cooper thoroughly cross-examined Oats and Angell about the status of their employment when the tire was made in 1992 and about their complaints and grievances with the company over many years of employment.  Despite this testimony and questioning, the jury found the [plaintiffs]' witnesses and testimony to be more persuasive and more credible.  The Tuckiers' witnesses provided the knowledge requirement of the punitive damages statute.  If Cooper knew that it

argument regarding the ratio of defective tires to the number of
tires it produced that year.  Id.  The court stated:

> [T]hat ratio is not one of the criteria for determining
> whether punitive damages should have been allowed in this
> matter.  What is important is the reprehensibility of
> Cooper's conduct.  When this one defective tire results
> in a person's death, there is sufficient evidence to
> establish this requirement.

Id.  After deciding that the amount was not too large under
Mississippi law, the court affirmed the award of punitive damages.
Id. at 690-91.

Under Texas law, "exemplary damages may be awarded only if the
claimant proves by clear and convincing evidence that the harm with
respect to which the claimant seeks recovery of exemplary damages
results from: (1) fraud; (2) malice; or (3) gross negligence."
Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).  The parties agree
that the issue in this case is whether Defendant was grossly
negligent.[73]  "Gross negligence" means:

> an act or omission: (A) which when viewed objectively
> from the standpoint of the actor at the time of its

---

was using bad stock to manufacture a product that would be
distributed into the stream of commerce and that the general public
relied on that product as a safety product, then Cooper would be
liable for punitive damages.  Cooper admitted during oral arguments
before this Court that if it knew bad stock was being used and that
this bad stock could cause a separation, then this would be a safety
factor.  The testimony provided by the Tuckiers' witnesses and the
verdict of the jury giving weight to this testimony provided the
necessary requirement of knowledge that allowed this issue to be
considered by the jury.

Tuckier, 826 So.2d at 690 (internal citations omitted).

[73]     Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages,
Docket Entry No. 175, pp. 6-8.

> occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11).

Having thoroughly canvassed prior opinions and the summary judgment evidence before it, the court seriously doubts that Defendant's acts or omissions in this case rise to the level of "conscious indifference to the rights, safety or welfare of others." Tex. Civ. Prac. & Rem, Code Ann. § 41.001(7)(B). Plaintiffs' brief tells a compelling story of how Defendant "had an actual subjective awareness that such failure [of tread separation] at highway speeds would likely lead to preventable consumer deaths and serious injuries, and that [Defendant] made a conscious decision to sell this defective tire anyway."[74] However, when the isolated quotations and statements are put back into the broader context of the summary judgment evidence provided to the court, an entirely different picture emerges.[75] That picture is one of a

---

[74]    Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 176, p. 8.

[75]    For example, with regard to Exhibit 18, memorandum written by Defendant in June 2000, Plaintiffs quote: "It was agreed that while the list [above] contained many good short-term and long-term ideas that could favorably impact tire durability, the list was too long." Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 176, p. 19 (quoting Docket Entry No. 176, Ex. 18, June 24, 2000, Defendant Correspondence from Beach and Piper to Distribution re: Tire Durability Action Items). Plaintiffs then state in their brief: "Translated, [Defendant] was saying, 'those are some good ideas to help prevent tread separations, but it's too expensive to do all of that.'" Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 176, p. 19. In reality, this so-called "translation" is intended to draw the court's attention away from the context of the rest of the

company that recognized problems existed and was attempting to fix them.  In addition, unlike the two cases discussed by the court, no evidence has been presented from among the ranks of Defendant's employees stating that bad materials were knowingly used in the tires.

Regardless, the court cannot weigh the evidence and say at the summary judgment stage that no reasonable jury could find that Defendant acted with "conscious indifference to the rights, safety or welfare of others."   Id.   When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans, 246 F.3d at 348; see also Boston Old Colony Ins. Co., 288 F.3d at 227.  The court believes, based on the evidence presently before it, that Plaintiffs will have a difficult time proving by the requisite clear and convincing evidence standard at trial that Defendant was grossly negligent in such a way as to cause their losses, but they have provided enough evidence to survive summary judgment.

Accordingly, the court **RECOMMENDS** that Defendant's motion for summary judgment on the issue of punitive damages be **DENIED** on this

---

memorandum.  The next sentences of that memorandum read: "Relative to other priorities and needs, the list needs to be prioritized.  Dewey and I have met to review the priority of the various action items.  Our recommendations are provided in Attachment 1."  Plaintiffs' Response to Defendant's SJ Motion on Punitive Damages, Docket Entry No. 176, Ex. 18, June 24, 2000, Defendant Correspondence from Beach and Piper to Distribution re: Tire Durability Action Items.

ground at this time.

Therefore, in sum, the court **RECOMMENDS** that Defendant's motion for partial summary judgment on punitive damages be **DENIED**.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Negligence Claim (Docket Entry No. 92) be **DENIED**; that Defendant's Opposed Motion for Partial Summary Judgment on Plaintiffs' Strict Liability Design Defect Claim (Docket Entry No. 93) be **DENIED**; that Defendant's Motion for Summary Judgment on Emanuel Trenado's Negligence Per Se (Docket Entry No. 96) be **DENIED**; that Plaintiffs' Fed.R.Civ.P. 56 Motion for Partial Summary Judgment on Specific Affirmative Defenses Plead by Defendant (Docket Entry No. 97) be **GRANTED IN PART, DENIED IN PART**; and that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims for Punitive Damages (Docket Entry No. 175) be **DENIED**.   If this recommendation is adopted, Plaintiffs' remaining claims will be: (1) negligence; (2) strict liability - design defect; (3) strict liability - manufacturing defect; and (4) gross negligence, in support of punitive damages. Furthermore, Defendant's only remaining affirmative defenses will be (1) Section 82.008 of the Texas Civil Practice and Remedies Code and (2) negligence per se regarding the speed of the vehicle at the time of the accident.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of January, 2010.

Nancy K. Johnson
United States Magistrate Judge

52